UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CESARI S.r.L., an Italian Limited Liability Company,<br><br>     Plaintiff,<br><br>    v.<br><br>PEJU PROVINCE WINERY L.P., a California Limited Partnership, PEJU FAMILY OPERATING PARTNERSHIP, L.P., a California Limited Partnership, and PEJU PROVINCE CORPORATION, a California Corporation<br><br>     Defendants. | CASE NO: 17-cv-00873-NRB-(KNF) |

**PLAINTIFF CESARI S.R.L.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

                HEALY LLC
                Valeria Calafiore Healy, Esq.
                154 Grand Street
                New York, New York 10013
                Telephone: (212) 810-0377
                Facsimile: (212) 810-7036

July 5, 2017              *Counsel for Plaintiff Cesari S.R.L.*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................................... iii

GLOSSARY .................................................................................................................................. iv

PRELIMINARY STATEMENT .....................................................................................................1

RELEVANT FACTS: NO GENUINE ISSUE OF MATERIAL FACT EXISTS ...........................5

ARGUMENT ...................................................................................................................................6

    I.    Peju's "*Actual* Usage" Argument Is Based On A Misunderstanding (or Misrepresentation) of the *B&B Hardware* Decision ............................................................6

        A.    The Meaning of "Usage" in *B&B Hardware* And the "Usage" At Issue In the 2004 TTAB Decision and In This Case ..................................................................7

        B.    The *B&B Hardware* Discussion About "*Actual* Usage" Is Not Relevant to This Case, Because It Relates Solely to the Situation, Not Present Here, Where the Marketplace Usage of a Mark that is *Different Than the Usage Listed in the Party's Trademark Application – i.e.*, a "Non-Disclosed Usage." ................................ 8

    II.    Peju's *Polaroid* Factors Defense Was Already Rejected by The Supreme Court and Is Not Relevant to Any Issue Before This Court ...................................................................11

    III.    Peju's Improperly Misrepresents Other Aspects of the Law and the TTAB's Decision...13

    IV.    Peju's Contention that the TTAB Decision "Resulted" From A "Deficient Procedure" Is A Question Peju Should Have Raised Through An Appeal, And Is Not A Basis to Avoid Issue Preclusion ........................................................................................................14

## TABLE OF AUTHORITIES

### CASES

Page

*Aetna Life Ins. Co. v. Enter. Mortg. Acceptance Co., LLC*,
  391 F.3d 401 (2d Cir. 2004)..................................................................................2

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 248 (1986)......................................................................................6

*B&B Hardware, Inc. v. Hargis Indus.*,
  716 F.3d 1020 (8th Cir. 2013) (*reversed and remanded*) .....................................6

*B&B Hardware, Inc. v. Hargis Indus.*,
  ___U.S.___, 135 S. Ct. 1293 (2015)............................................................. *passim*

*Federated Dep't Stores v. Moitie*,
  452 U.S. 394 (1981) ...........................................................................................15

*In re E.I. du Pont de Nemours & Co.*,
  476 F.2d 1357 (C.C.P.A. 1973) .................................................................. *passim*

*Irish Lesbian & Gay Org. v. Giuliani*,
  143 F.3d 638 (2d Cir. 1998) .................................................................................5

*McKoy v. North Carolina*,
  494 U.S. 433 (1990) ...........................................................................................10

*Octocom Systems, Inc. v. Houston Computers Services Inc.*,
  918 F.2d 937 (Fed. Cir. 1990)..............................................................................8

*Parklane Hosiery Co. v. Shore*,
  439 U.S. 322 (1979) .............................................................................................6

### STATUTES AND OTHER AUTHORITIES

15 U.S.C. § 1052(d) ......................................................................................................7

### SECONDARY SOURCES

*Amicus* Brief of the United States in *B&B Hardware v. Hargis Indus., Inc.*, Supreme Court Case
  No. 13-352 (filed September 11, 2014) ........................................................2, 3, 11

# GLOSSARY

| Abbreviation | Definition |
|---|---|
| 2004 TTAB Decision | Refers to the TTAB decision in *Cesari S.r.L. v. Peju Province*, submitted at Dkt. 24-3 at SJX-55. |
| *DuPont* factors | Refers to the factors listed in *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357 (C.C.P.A. 1973). |
| Opposition | Peju's Opposition to Cesari's Motion for Partial Summary Judgment filed at Dkt. 29. |
| Peju or Peju Defendants | Refers to the three named defendants in the above captioned proceeding, Peju Province Winery Limited Partnership, Peju Province Corporation, and Peju Family Operating Partnership L.P. |
| *Polaroid* factors | Refers to the factors listed in *Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961). |
| PSJ | Cesari's Motion for Partial Summary Judgment, filed at Dkts. 24-26. |
| *SquirtCo.* factors | Refers to the factors listed in *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980). |
| TTAB | Trademark Trial and Appeal Board of the United States Patent and Trademark Office. |
| USPTO | The United States Patent and Trademark Office. |

**SUMMARY**

The Peju Defendants' Opposition is based on a fundamental misunderstanding (or misrepresentation) of the controlling analysis that must be used in this case to decide whether to apply issue preclusion to the 2004 TTAB Decision that the word "LIANA" is likely to cause confusion with the registered work mark "LIANO" when used on wines.  The Supreme Court has held that a district court must decide whether to give preclusive effect to a prior TTAB decision on likelihood of confusion solely on the basis of the following rule:  "we hold that a court ***should*** give preclusive effect to TTAB decisions ***if the ordinary elements of issue preclusion are met***."  B&B Hardware, Inc. v. Hargis Indust., ___ U.S. ___, 135 S. Ct. 1293, 1299 (2015) (emphasis added).  Therefore, the only issue this Court must decide to resolve Cesari's motion for partial summary judgment ("PSJ") is whether the "ordinary elements" of issue preclusion are met in this case.

Instead of addressing the "ordinary elements" of issue preclusion, Peju raises purported defenses that it claims make the application of issue preclusion impermissible or unfair.  Under its primary line of defense—the "*actual usage*" defense— Peju argues that before opening the doors to consideration of whether the "ordinary elements" of issue preclusion are met in this case, this Court must first determine whether the prior TTAB decision on likelihood of confusion was based on "*actual* usage" of the marks at issue.  According to Peju, determining "*actual* usage" means that the district court must determine whether the TTAB did a meaningful and correct analysis of the *Polaroid* factors, which is the type of analysis that this Court would undertake if it were determining the issue of likelihood of confusion anew.[1]  In support of this proposition, Peju quotes "Justice Alito" as stating that a "TTAB's decision should have no later preclusive effect in a suit where ***actual*** usage in the marketplace is the paramount issue."  Dkt.

---

[1] *See, e.g.,* Opposition, Dkt. 29 at 1 ("Because the TTAB decision did not address any issues relevant to actual marketplace usage, which is paramount to the question of likelihood of confusion for infringement purposes in this action, issue preclusion cannot apply.")

29 at 4 (emphasis added).  Peju's arguments are flatly wrong for two simple reasons: (1) the actual usage discussed in *B&B Hardware* is irrelevant to any issue presented in this case, where it is undisputed that the sole usage at issue in the TTAB proceeding and in this case is identical: wine; and (2) the Supreme Court expressly rejected the proposition that a district court can review whether the TTAB applied (correctly or otherwise) any or all of the factors that a Circuit may apply in ordinary trademark infringement cases.[2]

The Supreme Court's discussion on "*actual* usage" has virtually nothing to do with Peju's interpretation and arguments about those terms, or with the *Polaroid factors* analysis that Peju claims is necessary to determine "*actual* usage."  The Supreme Court used the words "*actual* usage" to refer to "non-disclosed" usages of a mark, and to distinguish them from a disclosed usage.[3]  A non-disclosed usage simply is the use of a mark on goods that are not listed in a trademark application or registration.  When a person applies to register a mark in the USPTO, it must designate the goods on which its mark is used.  The goods so listed are considered the disclosed "usage."  As the Supreme Court explained, when a dispute over a mark is raised in front of the TTAB, the TTAB will generally only consider **the listed (or disclosed) usage(s)**.  By contrast, in a trademark infringement action, a party can sue in district court over either (or both) a disclosed usage (*i.e.*, the usage listed in, and protected by, a trademark registration), as well as a "non-disclosed" usage (a usage that is not encompassed by a trademark

---

[2] Many Circuits, as well as the TTAB, have their own version and number of factors used to decide "likelihood of confusion."  In the Eight Circuit, the *Polaroid* factors are referred to as the *SquirtCo* factors.  *See B&B Hardware*, 135 S. Ct. at 1306.  In the TTAB they are known as the *DuPont* factors from the Federal Circuit case of *In re E.I. DuPont De Nemours & Co.*, 476 F.2d 1357 (C.C.P.A. 1973).  *See B&B Hardware*, 135 S. Ct. at 1301, 1306.  *See also, e.g.*, VCH Decl., Exhibit 38 at SJX-201 (*Amicus Brief of the United States Solicitor General*, filed in *B&B Hardware* in September 2014 upon invitation by the Supreme Court).  In its Opposition, Peju quoted the foregoing Amicus Brief of the United Stated.  Opp., Dkt. 29 at 4.  This Court can take judicial notice of the U.S. Solicitor General's Amicus Brief in *B&B Hardware*.  *See, e.g., Aetna Life Ins. Co. v. Enter. Mortg. Acceptance Co., LLC*, 391 F.3d 401, 410 n.8 (2d Cir. 2004) ("We take judicial notice of the *amicus* brief filed by the Securities and Exchange Commission in a pending appeal.")

[3] *See, e.g., B&B Hardware*, 135 S. Ct. at 1308.  *See also* VCH Decl., Exhibit 38 at SJX-195-198.

2

registration).⁴  That is because the Lanham Act permits an infringement action to be based on common law nonregistered trademark rights.⁵  If a party sues in district court over a "non-disclosed" usage (*i.e.,* an *actual* usage) it is unlikely that a TTAB decision could ever have issue preclusive effect, because such non-disclosed (*actual*) usages generally are not adjudicated by the TTAB.  There are situations, however, where a party's goods (*i.e.*, usage) at issue in an infringement action are not identical, but may constitute a subset of a usage adjudicated by the TTAB.  For those cases, the Supreme Court explained, "materiality…is essential" because a party cannot escape issue preclusion by making trivial variations to its usage, just like it could not escape issue preclusion by adding trivial variations to its mark.  *B&B Hardware*, 135 S. Ct. at 1308 ("trivial variations between the usages set out in an application and the use of a mark in the marketplace do not create different 'issues,' just as trivial variations do not create different 'marks.'  Otherwise, a party could escape the preclusive effect of an adverse judgment simply by adding an immaterial feature to its mark.  That is not the law.").  It is to ensure that trivial variations would not escape issue preclusion, that when the Supreme Court remanded the case to the Eight Circuit, it instructed the court that "so long as the other ordinary elements of issue preclusion are met, **when the usages adjudicated by the TTAB are materially the same as those before the district court**, issue preclusion should apply."  *B&B Hardware*, 135 S. Ct. at 1310 (emphasis added).  The "materially the same" sentence in the Supreme Court's instruction is

---

⁴ For instance, in this case, Peju applied to register "LIANA" as a word mark, listing "wines" as its class of goods (*i.e.*, its usage).  Cesari already had a trademark registration for the word mark "LIANO" also listing "wines" as its class of goods.  The TTAB adjudicated the likelihood of confusion issue between LIANA and LIANO based on the parties' disclosed usage, *i.e.*, wines.  If, hypothetically, Cesari were also using its mark on cars, and later sued Peju for infringement of its mark as applied to cars, that would be a suit where the "*actual* usage" is different than the usage adjudicated by the TTAB.  In a suit of that type (*i.e.*, involving cars), TTAB preclusion likely would not apply because the party's "actual usage," (cars), is different that then usage adjudicated by the TTAB (wines), and cars are unlikely to qualify as "materially the same usage" as wines.  The Amicus Brief of the United States Solicitor General, quoted in Peju's Opposition, (Dkt. 29 at 4), as well as in the *B&B Hardware* discussion on this topic, 135 S. Ct. at 1307-08, explains this concept in detail.  *See* VCH Decl., Exhibit 38 at SJX 196-197.
⁵ In this case, it is undisputed that Cesari is suing Peju solely on the basis of its registered trademark rights to the word mark "LIANO" and on the basis of the class of goods disclosed in its trademark registration: wines.  *See* Dkt. 1 (Complaint) and Dkt 1-1 (Trademark Registration) (also included in Dkt. 24-3 at SJX-1 and SJX-89.

therefore not, as Peju seems to argue, ***a second and separate analysis*** from the "ordinary elements" of issue preclusion.  *See* Dkt. 29 at 4 (separating the above sentence in two parts and adding the conjunction "and").  The "materially the same" sentence simply expands the issue to which TTAB preclusion applies to capture the identical usage considered by a prior TTAB decision, and any other usage at issue in the infringement action that is "materially the same."

This case does not involve a situation where a non-disclosed (or *actual*) usage is at issue, nor does it involve a case where this Court must determine whether the usage at issue is "materially the same."  It is undisputed that this case is only about one usage—wines—which is ***identical*** to the usage previously adjudicated by the TTAB, as disclosed in the parties trademark registration for LIANO and trademark application for LIANA.[6]  Accordingly, other than to explain why Peju's argument is unfounded, "actual" usage is irrelevant here.

As Peju's argument about "actual usage" is unfounded, its related argument that "actual usage" must be determined by performing a *Polaroid* factors analysis and comparing it to the analysis of factors considered (or not) by the TTAB also fails.  Because it is undisputed that the usage at issue in the two proceedings is one and the same, and because no other "ordinary element" of issue preclusion is disputed, the 2004 TTAB Decision must be given preclusive effect and there is no basis in the law for asking a district court to undertake a *Polaroid* factors analysis and comparison.  To the contrary, it would be legal error to engage in such analysis. The Supreme Court expressly rejected the notion that to decide whether issue preclusion applies, a district court should (or could) do an analysis and comparison of the *Polaroid* factors (there

---

[6] *See, e.g.,* Opp., Dkt. 29 at 1 (discussing how to determine "whether a likelihood of customer confusion between Peju's LIANA mark and Plaintiff's LIANO mark as they are both used ***on wines*** in the marketplace.").

called *SquirtCo.*) to determine whether the TTAB conducted a meaningful (or correct) analysis of each or any of those factors.[7]

Peju's remaining defense, that it is unfair to give preclusive effect to the 2004 TTAB Decision, because the TTAB erred in converting a motion for judgment on the pleadings into one for summary judgment without notice is not a valid basis to avoid issue preclusion. That is a type of error that must be raised by appeal. Tribunals of first instance are regularly accused by a losing party of committing various legal errors. If the losing party could get a do-over in front of another court by foregoing an appeal, and later claiming that a legal error committed by the prior court precludes the application of issue preclusion, it is difficult to imagine why a losing party ever would go through the burden of appealing. Instead, parties could simply ignore the ruling, and wait until they are sued again to get a do over. That is simply not the law. As *B&B Hardware* squarely held the "fact that the TTAB may have erred … does not prevent preclusion" because "issue preclusion prevents relitigation of wrong decisions just as much as right ones." *B&B Hardware*, 135 S. Ct. at 1308.

In its Opposition, Peju does not dispute that the "ordinary elements" of issue preclusion are met. Peju does not dispute that the applicable "ordinary elements of issue preclusion" are as follows:

> "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *B&B Hardware*, 135 S. Ct. at 1303; Restatement (Second) of Judgments § 27 (1982). *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998) (same).

Dkt. 25 at 6; Dkt. 29 (not objecting to this standard or raising any different standard). Peju also does not dispute that the foregoing elements are met:

---

[7] *See B&B Hardware*, 135 S. Ct. at 1308 (emphasis added) (finding that "the Eight Circuit erred in holding that issue preclusion could not apply here because the TTAB relied too heavily on [two *DuPont* factors], appearance and sound.").

(1) **Same issue actually litigated and determined**: (b) *Likelihood of Confusion Between Same Marks LIANA and LIANO*—Peju does not dispute that in 2004, the TTAB "issued a decision in *Cesari S.r.L. v. Peju Province*, finding a likelihood of confusion between Plaintiff's LIANO's [registered] [trade]mark and Peju Province's [applied-for mark] LIANA," used on wines, Dkt. 29 at 5, and that in this case Cesari is suing Peju based on its registered mark "LIANO" for wines over Peju's use of the word "LIANA" for wines; *Same Usage*—Peju does not dispute that the usage at issue in the TTAB proceeding and in this case is "wines." Dkt. 29 at 1.

(2) **Issue was essential to determination**: Peju does not dispute that the TTAB's determination that the use of the term "LIANA" on wines was likely to cause confusion with the registered mark "LIANO" on wines was essential to the TTAB's grant of summary judgment in favor of Cesari.

(3) **Valid final judgment**: Peju does not dispute that the 2004 TTAB Decision constitutes a valid final judgment that Peju chose not to appeal. Dkt. 29 at 19 ("The fact that Peju Province did not appeal does not make the decision …");

(4) **Same party or privies**: Peju does not dispute in its Opposition that the three Peju are privies and would be equally bound by the 2004 TTAB Decision, if this Court decides to give it preclusive effect.

Because Peju's defenses to issue preclusion lack merit, and the "ordinary elements" of issue preclusion are met, this Court should grant Cesari's Motion for Partial Summary Judgment and give the 2004 TTAB Decision preclusive effect.

**RELEVANT FACTS: NO GENUINE DISPUTES OF MATERIAL FACT EXIST**

Because issue preclusion is a question of law,[8] there are only limited facts that are material to the decision of this legal question.  Those limited facts are: (1) the existence of a prior decision, and (2) whether the party against whom collateral estoppel is invoked is "the same party or his privy" to the prior decision.[9]  The remaining aspects of the issue preclusion analysis are legal in nature and depend on the record established in the prior proceeding and the pleadings in this proceeding, which evidence whether the issue currently being raised is the same as the one previously decided.  Both these facts are undisputed in this case.  The existence and historic record of the prior decision as to which preclusive effect is sought in this case—the 2004 TTAB Decision—is undisputed.  Similarly, Peju does not challenge in its Opposition that the two Peju Defendants who were not named parties to the 2004 TTAB proceeding, are privies to the Peju defendant who was, Peju Province Limited Partnership, and that all three Peju Defendants will be equally bound by the 2004 TTAB Decision, should this Court agree that issue preclusion applies.  In light of the applicable analysis, none of the disputes that Peju tries to create in its response to Cesari Rule 56.1 Statement, as well as in its "Additional Statements," constitutes a genuine dispute of material fact, and should be disregarded, because none is relevant to the pending PSJ motion.[10]  *See* Cesari's Reply to Peju's Rule 56.1 Responses, and Cesari's Reply to Peju's "Additional Statements."

## ARGUMENT

I. **Peju's "*Actual* Usage" Argument Is Based on a Misunderstanding (or Misrepresentation) of the *B&B Hardware* Decision**.

Peju's main argument in its Opposition is that "[b]ecause the TTAB decision did not address any issues relevant to ***actual*** marketplace ***usage*** … issue preclusion cannot apply."  Dkt.

---

[8] *B&B Hardware, Inc. v. Hargis Indus.*, 716 F.3d 1020, 1023 (8th Cir. 2013) ("collateral estoppel" is "a question of law.").

[9] *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979) ("Collateral estoppel…has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.").

[10] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted.").

29 at 1 (emphasis added). According to Peju, "actual usage" means that the TTAB did not consider "how the parties marks are *actually used* on wines." *Id.* Peju claims that its purported "*actual* usage" requirement derives from certain statements by Justice Alito in the *B&B Hardware* decision. For the reasons set forth below, Peju's argument is unfounded and can be easily rejected.

### A. The Meaning of "Usage" in B&B Hardware and The "Usage" At Issue in the 2004 TTAB Decision and in this Case.

To understand what "actual usage" means under *B&B Hardware*, it is first important to understand the meaning of the term "usage." *B&B Hardware* explains it. The Supreme Court found that "[t]o obtain the benefits of registration, a mark owner files an application with the PTO." *B&B Hardware*, 135 S. Ct. at 1300. "The application must include, among other things, … the goods in connection with which the mark is used…." *Id.* "**The usages** listed in the application—***i.e., those goods on which the mark appears along with, if applicable, their channels of distribution***—are critical." *Id.* (emphasis added). "The applicant's right to register must be made on the basis of the goods described in the application." *Id.* (quoting 3 McCarthy § 20:24, at 20-83) . "[I]f an application does not delimit any specific trade channels of distribution, **no limitation will be applied**." *Id.* (quoting 3 McCarthy § 20:15, at 20-85) (emphasis added). "The PTO generally cannot register a mark which 'so resembles' another mark 'as to be likely, **when used on or in connection with the goods of the applicant**, to cause confusion, or to cause mistake, or to deceive." *Id.* (quoting 15 U. S. C. § 1052(d)[11]) (emphasis added. Thus, as explained in *B&B Hardware*, the term "usage" simply means the ***goods*** on which a mark is used, along with the channels of distribution, if those are specified in a trademark application. If no channel of distribution is specified, the usage will consist of the goods listed for any and all distribution channels.

---

[11] Section 1052(d) is often referred to as "Section 2(d)" of the Lanham Act. *See, e.g., DuPont*, 476 F.2d at 1360.

In this case, it is undisputed that the "usage" at issue in the 2004 TTAB Decision and here is "wines," ***without any limitations as to the channels of distribution***.[12]  This "usage" is derived from Peju's 2003 application to register the term LIANA as a trademark, in which Peju listed the "goods and/or services" of its applied-for mark as "wines," without any limitation as to specific channels of distribution.  *See* July 3, 2017 Declaration ("Decl."), Exhibit 37 at SJX-169.  The "wines" usage listed for the applied-for "LIANA" mark, became the subject of the 2004 TTAB Decision.  Dkt. 24-3 at SJX-36-40.  The usage at issue in this case is derived from Cesari's complaint, which seeks redress for the identical usage at issue in the TTAB proceeding —namely, Peju's use of the word "LIANA" to market and sell wines.  Dkt. 24-3 at SJX-2 to 19; SJX-28-29 at ¶¶36, 46, 57; Dkt. 29 at 1.

> B.  **The *B&B Hardware* Discussion About "*Actual* Usage" Is Not Relevant to This Case, Because It Relates Solely to the Situation, Not Present Here, Where the Marketplace Usage of a Mark that is *Different Than the Usage Listed in the Party's Trademark Application – i.e.*, a "Non-Disclosed Usage."**

Having clarified what the term "usage" means, we turn to Peju's argument that in the 2004 dispute between Peju and Cesari, the TTAB did not consider "*actual* marketplace usage" or how Peju's applied-for mark was "*actually* used on wines," which Peju claims is required for issue preclusion to apply under *B&B Hardware*.  Peju constructs this argument about "***actual*** usage" by patching together select and unrelated statements in the *B&B Hardware* decision.  Specifically, Peju argues that its "actual usage" argument is supported by "Justice Alito['s] observ[ation] that 'if the TTAB does not consider the marketplace usage of the parties' marks,

---

[12] Regarding channels of distribution, Cesari notes that Peju misrepresents the contents of the TTAB decision by claiming, among other things, that the TTAB "refused even to consider Peju's argument that its trademark application was limited to dessert wine."  Dkt. 29 at 10-11.  This is incorrect.  The TTAB did not refuse to consider, but rather rejected, on the basis of controlling precedent, Peju's attempt to narrow its unlimited trademark application for "LIANA" covering the "wine" class of goods for unlimited channels of trade, by advocating in its brief that a limitation to goods and channels of trade could apply.  *See* Dkt. 24-3 at SJX-39 (quoting *Octocom Systems, Inc. v. Houston Computers Services Inc.,* 918 F.2d 937 (Fed. Cir. 1990).  A review of *Octocom,* makes clear that the TTAB faithfully applied the law in rejecting Peju's argument.  *See id.* ("an application with an identification of goods having no restriction on trade channels obviously is not narrowed by testimony that the applicant's use is, in fact, restricted to a particular class of purchasers.").

9

the TTAB's decision should have no later preclusive effect in a suit where ***actual usage*** in the marketplace is the paramount issue." Dkt. 29 at 4 (emphasis added).[13]  Peju then omits Justice Alito's discussion before and after the quoted text, and claims instead that "Justice Alito is crystal-clear that many decisions by the Board will fall into the latter category, making issue preclusion inapt for a significant number of Board decisions." *Id.*  But Justice Alito said nothing of the sort.  Justice Alito's statement that "for a great many registration decisions issue preclusion obviously will not apply" simply is based on the fact that for many of registration decisions "***the ordinary elements*** [of issue preclusion] will not be met."  *B&B Hardware*, 135 S. Ct. at 1306 (emphasis added).  That language has nothing to do with Peju's argument that the TTAB allegedly must consider "*actual* marketplace usage."  Justice Alito's reference to "actual usage" in a separate section of the *B&B Hardware* decision relates solely to "***non-disclosed usages***" of a mark, which are usages not listed in, and therefore "not encompassed," in a trademark application or registration.  *Id.* at 1307-08.  Therefore, the phrase "actual usage" has nothing to do with Peju's argument, but is used in *B&B Hardware* solely to differentiate a non-disclosed usage from the simple term "usage" which, as described above, means the goods or services listed in a trademark application.

The issue of non-disclosed (or actual) usages arises when a trademark applicant lists a category of goods in its application, *i.e.*, a "usage", but then *actually* uses its mark on a different category of goods *not listed in the application*, *i.e.*, a different "usage" or a "non-disclosed usage."[14]  Justice Alito explained that "if a mark owner ***uses its mark in ways that are materially unlike the usage in its application***, then the TTAB is ***not*** deciding the same issue." *Id.*

---

[13] Peju also cites Justice Ginsburg's concurrence.  Dkt. 29 at 5.  It is well established that a Justice's concurrent opinion does not "provide a basis for recharacterizing the holding of a Court."  *McKoy v. North Carolina,* 494 U.S. 433, 448 n. 3 (1990) ("the meaning of a majority opinion is to be found within the opinion itself; the gloss that an individual Justice chooses to place upon it is not authoritative.").  Accordingly, there is no need to address Peju's argument about Justice Ginsburg's concurrence.

[14] For instance, if a trademark owner lists wine as its category of usage in the application, but then uses the mark to sell books, that usage would be a non-disclosed usage, i.e., one not listed in the trademark application.

(emphasis added).[15]  Justice Alito explained that the TTAB "typically analyzes the marks, goods, and channels of trade only as disclosed in the application and in the opposer's registration, regardless of whether the actual usage of the marks by either party differs." *Id.*  This means simply that if a party applies to register a mark for use on wines, but that party is also actually using the mark on cars, the TTAB can only analyze the usage disclosed in the application, wine.[16]  The Court explained that, unlike in infringement litigation, the TTAB's "determination that a likelihood of confusion does or does not exist ***will not resolve the confusion issue with respect to non-disclosed usages***," *i.e., the actual usages.  Id.* (emphasis added).  As used in *B&B Hardware*, therefore, the terms "usage" and "actual usage" simply are used to refer to distinct classes of goods, those disclosed in a trademark application or registration, and those that are not.

For the foregoing reasons, "actual usage" has nothing to do with Peju's arguments.  The issue of "***actual*** usage" is simply not relevant to this case because Peju does not, and could not, contend that this trademark infringement action relates to a usage of the term "LIANA" on a class of goods other than wines, which is the same class of goods at issue in the 2004 TTAB Decision.

## II. Peju's *Polaroid* Factors Argument Was Already Rejected by The Supreme Court and Is Not Relevant to Any Issue Before This Court.

Because Peju's argument that this Court must determine "actual usage" lacks merit, Peju's related argument that the alleged "actual usage" must be determined by reference to any or all of the *Polaroid* factors is also unfounded. [17]  Dkt. 29 at 8.  Peju states that in the Second Circuit, the question of likelihood of consumer confusion is governed by the eight *Polaroid* factors.  Peju argues that because "[o]n July 20, 2004, the Board [i.e., the TTAB] issued a

---

[15] *See also* United States Amicus Brief, VCH Decl., Ex. 38 at SJX-186-87, SJX-195-197.
[16] *See also* United States Amicus Brief, VCH Decl., Ex. 38 at SJX-195-197.
[17] Moreover, Peju's arguments about labels and designs are wholly irrelevant in this case for another reason. Cesari's action is based on Peju's infringement of Cesari's federally registered ***word mark***.  Cesari's has not sued Peju for infringement of any design mark or of a trade dress.  Therefore, Peju's arguments about designs and labels are wholly irrelevant, as is the entirety of its discussion of the *Polaroid* factors.

decision in *Cesari S.r.L. v. Peju Province*, finding a likelihood of confusion between Plaintiff's LIANO mark and Peju Province's LIANA trademark without any consideration of a majority of the *Polaroid* factors", issue preclusion cannot apply in this case. Dkt. 24 at 5-6.

The Supreme Court expressly rejected the argument that to decide whether issue preclusion applies, a district court should do an analysis and comparison of the *Polaroid* factors (there called *SquirtCo.* factors) to determine whether the TTAB conducted a meaningful analysis of each or any of those factors, or see if it applied them correctly. That reasoning (repeated by Peju here) was the basis for the Eight Circuit's decision to deny issue preclusion, which the Supreme Court reversed, holding that it does not "matter that the TTAB and [a] Circuit use different factors to assess likelihood of confusion."[18] *See B&B Hardware*, 135 S. Ct. at 1306-07. Because the "same likelihood of confusion standard applies to both registration and infringement," "parties cannot escape preclusion simply by litigating anew in tribunals that apply that one standard differently. A contrary rule would encourage the evils that issue preclusion helps to prevent." *Id.* at 1307.

Because the Supreme Court already considered and rejected the *Polaroid* factors challenge advanced by Peju in its Opposition, the *Polaroid* factors analysis presented by Peju, and its attempt to establish that the TTAB erred in applying some or all of the *Polaroid* factors is irrelevant to issue preclusion, the only question presented in Peju's motion. The Supreme Court held that to decide the preclusive effect of a TTAB decision, this Court must determine whether the "ordinary elements" of issue preclusion are met. The factors that one or another regional Circuit uses to determine likelihood of confusion in infringement actions, or their comparison to some or all of the factors that the TTAB may have used, have no relevance to the question of

---

[18] "The Eight Circuit's primary objection to issue preclusion was that the TTAB considers different factors than it does. Whereas the TTAB employs ***some or all of the DuPont factors*** to assess likelihood of confusion, the Eight Circuit looks to similar, but not identical, factors identified in *SquirtCo.*" *B&B Hardware*, 135 S. Ct. at 1306.

12

whether the "ordinary elements" of issue preclusion are met.  *B&B Hardware*, 135 S. Ct. at 1307.

### III.  Peju Improperly Misrepresents Other Aspects of the Law and of the TTAB Decision.

Although Cesari does not respond to Peju's *Polaroid* factors analysis because it is not relevant to the issue before the Court, Cesari disagrees with the allegations made in Peju's analysis and respectfully notes that Peju makes numerous misrepresentations about the 2004 TTAB Decision and the applicable law.  Although it is not possible to address all of them here, Cesari provides one example.  Peju repeatedly claims that the TTAB considered the marks only in the abstract, and not in the marketplace context.[19]  While this statement is irrelevant to issue preclusion, it is blatantly untrue.  The TTAB's decision expressly states that with "respect to the issue of likelihood of confusion, we are guided by the factors set forth in the case of *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357 (C.C.P.A. 1973) (*DuPont*)."  Dkt. 24-3 at SJX-39.  The *DuPont* factors used by the TTAB, like the *Polaroid* factors or other factors used by other Circuits, are used ***only when deciding likelihood of confusion in the "marketplace context,"*** and not, as Peju claims, in the abstract.  *See DuPont*, 476 F.2d at 1361.  As the Supreme Court noted, "the TTAB evaluates likelihood of confusion by applying ***some or all of*** the [*DuPont*] factors."  *B&B Hardware*, 135 S. Ct. at 1301.  In the *Cesari v. Peju* case, the TTAB expressly applied the *DuPont* marketplace factors it deemed pertinent (and which were made of record) to its determination.  SJX-37-40.  *See also DuPont*, 476 F.2d at 1361.

But what Peju really means is that it was dissatisfied with the TTAB's analysis of those factors, which Peju deems to have been legally erroneous.[20]  Instead of appealing the TTAB

---

[19] *See, e.g.,* Dkt. 29 at 8 (the "Board made no inquiry into the context in which the marks are displayed, instead analyzing the two word marks in the abstract."); *id.* at 5, 11, 12, 16.

[20] Indeed, the entirety of Peju's *Polaroid* factors analysis is intended to demonstrate that the TTAB committed legal error in not considering one or another factor, or in giving too much weight to just some of the factors.  Peju claims that if there were a jury trial in this case the results would be different.  But this is irrelevant to issue preclusion.  Indeed, in *B&B Hardware,* the TTAB had found relying on two factors only (name and sound of the marks) that

13

Decision, however, Peju chose to ignore it, apparently in the hopes of having a second bite at the apple in another court, as Peju is now trying to do here. But "ordinary preclusion law teaches that if a party to a court proceeding does not challenge an adverse decision, that decision can have preclusive effect in other cases." *Id.* at 1305. "Undoubtedly there are cases in which the TTAB places more weight on certain factors than it should. When that happens, an aggrieved party should seek judicial review." *See B&B Hardware*, 135 S. Ct. at 1308. Having had the opportunity to avail itself of two separate appellate routes,[21] and having chosen to pursue neither, Peju lacks any basis to avoid the preclusive effect of the TTAB's decision by mischaracterizing its basis, mischaracterizing the law, and generally misrepresenting the analysis this Court must conduct.

## IV. Peju's Contention that the TTAB Decision "Resulted" From A "Deficient Procedure" Is A Question Peju Should Have Raised Through An Appeal, And Is Not A Basis to Avoid Issue Preclusion.

Peju's final defense, that preclusion is inappropriate because the TTAB's "procedures used in the prior proceeding are fundamentally unfair and unlike procedures a district court would follow in deciding the issue anew," also lacks merit. Dkt. 29 at 17. The Supreme Court already has considered and rejected such a challenge. *B&B Hardware*, 135 S. Ct. at 1309 ("Hargis also argues that registration is categorically incompatible with issue preclusion because the TTAB uses procedures that differ from those used by district courts."). The Supreme Court held that "there is no categorical 'reason to doubt the quality, extensiveness, or fairness' . . . of the agency's procedures. In large part they are exactly the same as in federal court." *Id*. The Court went on to find that absent a "compelling showing of unfairness," TTAB decisions have preclusive effect. *Id*. The Court explained that such a compelling showing might be made if "a

---

likelihood of confusion existed, whereas the jury found it did not exist. The Supreme Court held this did not matter, because even a completed do-over in court, as had happened in *B&B Hardware*, could not trump the preclusive effect of the prior TTAB decision. *B&B Hardware*, 135 S. Ct. at 1302.

[21] *See, e.g., B&B Hardware*, 135 S. Ct. at 1301 ("After the TTAB decides whether to register the mark, a party can seek review in the U.S. Court of Appeals for the Federal Circuit, or it can file a new action in district court.")

party may have tried to introduce material evidence but was prevented by the TTAB from doing so, or the TTAB's bar on live testimony may materially prejudice a party's ability to present its case." *Id.*

The examples cited by the Supreme Court have no application here, nor does Peju invoke them. For instance, Peju does not contend that "it tried to introduce material evidence but was prevented by the TTAB from doing so." Instead, Peju argues that the TTAB committed ***legal error***—namely, that the TTAB violated the Federal Rules of Civil Procedure and the comparable internal rules of procedure—by converting a motion for judgment on the pleadings into one for summary judgment. Dkt. 29 at 28-29. But even if the TTAB had committed the legal error alleged by Peju, legal error does not amount to the "compelling showing of unfairness" contemplated by the Supreme Court. To the contrary, the Supreme Court held that legal error is not a basis to avoid issue preclusion. *See B&B Hardware*, 135 S. Ct. at 1308 ("The fact that the TTAB may have ***erred***, however, does not prevent preclusion." (emphasis added)); *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398-401 (1981).

* * *

For the foregoing reasons and those set forth in Cesari's opening memorandum of law, Cesari respectfully submits its request for entry of partial summary judgment is well founded and appropriate, and should be granted.

Respectfully submitted,

Dated: July 5, 2017   By:   /s/ *Valeria Calafiore Healy*
Valeria C. Healy, Esq. (SDNY# VC3773)
HEALY LLC
154 Grand Street
New York, New York 10013
Telephone:   (212) 810-0377
Facsimile:   (212) 810-7036
valeria.healy@healylex.com

*Counsel for Plaintiff Cesari S.r.l.*