**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CESARI S.R.L., an Italian Limited Liability Company, | CASE NO: 17 Civ. 873 (NRB) |
| Plaintiff, | **FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR:** |
| v. | 1. **Federal Trademark Infringement and Unfair Competition** |
| PEJU PROVINCE WINERY L.P., a California Limited Partnership, PEJU FAMILY OPERATING PARTNERSHIP, L.P., a California Limited Partnership, PEJU PROVINCE CORPORATION, a California Corporation, | 2. **Common Law Trademark Infringement and Unfair Competition** |
| Defendants. | |

Plaintiff Cesari S.R.L. ("Plaintiff" or "Cesari"), with knowledge as to its own conduct and upon information and belief as to the conduct of all others, hereby complains as follows against Defendants Peju Province Winery L.P., Peju Family Operating Partnership L.P., and Peju Province Corporation (together, the "Defendants" or "Peju"), all three entities doing business as "Peju Province Winery":

## SUMMARY AND NATURE OF THE ACTION

1.   This is a straightforward action involving a well known producer of Italian wines, Cesari, and a recidivist trademark infringer, Peju, a family-owned Napa winery that willfully infringed Cesari's federally registered and incontestable trademark "Liano," by using the virtually identical and confusingly similar name "Liana" to market and sell wines:

CESARI'S REGISTERED TRADEMARK[1]

# LIANO

**PEJU'S COPIED VERSION OF CESARI'S TRADEMARK**

# LIANA

2.   On August 29, 2001, Cesari filed a federal trademark application for the "Liano" mark, serial number 76-306,621.

3.   On January 7, 2003, Cesari received a federal trademark registration for the "Liano" mark covering wines, registration number 2,671,495. A true and correct copy of Cesari's registration for Liano, as recorded on the principal register, was filed as Exhibit 1 to the original complaint.

4.   Since obtaining its federal trademark registration, Cesari has had the exclusive right to use the Liano trademark to market and sell wines using the Liano mark.

5.   The Liano mark has also became incontestable as provided for under the Lanham Act.

6.   Peju is a relatively new, family-owned and -operated winery based in the Napa region, which distributes its wines in New York and throughout the United States.

7.   Anthony Peju and Herta Behensky (also known as Herta Peju) founded Peju Province Winery on or about 1995.

8.   The Pejus created the three entities that are named as defendants in this action, Peju Province Winery L.P. and Peju Province Corporation 1995, and Peju Family Operating Partnership, L.P. in 2012.

---

[1] See Dkt. 1-1.

9. Peju Family Operating Partnership was created in 2012 for estate planning purposes.

10. As of June 21, 2017 Defendants Peju Province Winery L.P., Peju Family Operating Partnership, L.P., and Peju Province Corporation operated as a winery business at 8466 St. Helena Highway, Rutherford, California 94573.

11. Tony and Herta Peju have two daughters, Ariana Angela Peju and Lisa Alena Peju, who work with them in the family winery business.

12. Ariana Peju was listed as an employee of Peju Province Winery beginning on July 1, 2001.

13. On July 25, 2018, Ariana Peju testified under oath that her father, Tony Peju, has been her boss for 12 years.

14. On July 25, 2018, Ariana Peju testified that her father, Tony Peju, was still the President and/or CEO of each of the Defendants.

15. In May or June 2018, Tony Peju retained new counsel to represent all Defendants in this action.

16. Lisa Peju has been working at Peju Province Winery since 2004.

17. As of April 6, 2017, Anthony Peju was still the "owner" of Peju Province Winery and its affiliates.

18. As of April 6, 2017, Herta Peju was also the "owner" of Peju Province Winery and its affiliates.

19. As of April 6, 2017, Ariana and Lisa Peju also represented to be the owners, with their parents, of Peju Province Winery and its affiliates.

20. As of April 6, 2017, no other person other than the four Peju family members named above owned Peju Province Winery or its affiliates. Anthony Peju, Herta Peju, Peju Province Winery LP and Peju Province Corporation have known about Cesari's federally registered trademark "Liano" since at least 2003, when the parties became involved in litigation before the Trademark Trial and Appeal Board ("Trademark Board") of the United States Patent and Trademark Office ("PTO").

21. On July 20, 2004, the Trademark Board issued a judgment against Peju and in favor of Cesari finding that using Peju's "Liana" mark to market or sell wines would create a likelihood of confusion with Cesari's "Liano" mark (the "2004 Decision").

22. A true and correct copy of the 2004 Decision by the Trademark Board relating to Peju's attempt to register "Liana" as a trademark for wines has been filed in this action as Exhibit 2 to Cesari's original complaint, filed at Dkt. No. 1-2.

23. In its 2004 Decision, the Trademark Board held that the name "Liana" as a trademark covering wines would cause confusion with Cesari's "Liano" trademark, because "Liana" is virtually identical to Cesari's trademark, and because both companies operate in the same sector.

24. Peju did not challenge the 2004 Decision.

25. On September 28, 2004, the United States Patent Office issued a notice that Peju had abandoned its application for the Liana mark as a result of the 2004 decision. Attached hereto as Exhibit 2 is a true and correct copy of the Notice of Abandonment of Peju's "Liana" mark.

26. The 2004 Decision constitutes *res judicata* between the parties, and Peju had no right to disregard it, and no right or authorization to disregard Cesari's federally registered trademark.

27. Despite knowing that using the word "Liana" to market and sell wines would infringe Cesari's federally registered trademark on or about 2014, Peju decided to ignore the 2004 Decision, ignore Cesari's federally registered trademark, and use the infringing name "Liana" anyway, to market its wines and wine business in New York and throughout the United States. Its actions were willful, without authorization, and in reckless disregard for Cesari's trademark rights.

28. Because Peju refused to cease its infringing activities, Cesari brought this action to remedy Peju's willful and unlawful conduct. Cesari seeks disgorgement of all proceeds and other benefits obtained by Peju from their unlawful and willful infringement, and recovery of all costs and fees incurred by Cesari as a result of Peju's unlawful conduct before and during the pendency of this action.

29. In its original complaint, Cesari asserted a claim for injunctive relief seeking to enjoin the use of the Liana name. In response to Cesari's repeated requests that Peju cease and desist from their infringement and that the Court enjoin their use of the Liana mark, Peju represented to the Court and to Cesari that it ceased using the LIANA mark in July 2018 and has no intention of resuming such use in the future. In reliance on Peju's representations, under oath in deposition and to the Court through their counsel, that Peju has ceased all use of the Liana name to market and sell wines, Cesari is withdrawing its request for an injunction, but reserves the right to seek leave to amend and renew its demand should Peju resume use of the Liana name.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

**The Parties**

30.  Plaintiff Cesari S.R.L. is an Italian limited liability company headquartered in Northern Italy. Cesari has been producing high-quality wines for decades and distributes its wines throughout North America, including under its federally registered "Liano" trademark.

31.  The Defendants are three entities created, owned, and operated by the Peju family, which consists of Anthony Peju and his wife, Herta Peju (*née* Behensky) and their daughters, Ariana and Lisa.

32. Defendant Peju Province Winery, L.P. is a California Limited Partnership with a registered address at 8466 St. Helena Highway, Rutherford, California 94753, with general partner, Peju Province Corporation and CEO and/or President Anthony Peju.

33. Defendant Peju Province Corporation is a California corporation with a registered address at 8466 St. Helena Highway, Rutherford, California 94753, with CEO and/or President Anthony Peju.

34. Defendant Peju Family Operating Partnership, L.P., is a California limited partnership with a registered address at 8466 St. Helena Highway, Rutherford CA 94573, with general partner Peju Province Corporation and CEO/President Anthony Peju.

35. At all times relevant hereto, the Defendants have operated as a single business enterprise, owned and controlled by the Peju family, and generally doing business as the Peju Province Winery.

### Jurisdiction and Venue

36.  This Court has original subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) because this action arises under an Act of Congress

relating to trademarks, as it involves Peju's infringement of Cesari's federally registered trademark. *See* 15 U.S.C. §§ 1114 *et seq.*

37. This Court also has supplemental and pendent jurisdiction pursuant to 28 U.S.C. § 1338(b) over all non-federal claims, because they are related to the claims arising under federal law.

38. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

39. The Defendants have waived any objection to this Court's exercise of personal jurisdiction in this action.

**Cesari's Exclusive Right to Use the "Liano" Trademark**

40. Cesari is the owner of the trademark "LIANO" or "Liano" for wines, as well as the incontestable U.S. Trademark Registration No. 2,671,495 for the "Liano" mark for wines in International Class 33. Cesari's federal trademark registration issued on January 7, 2003, with constructive rights dating back to August 29, 2001.

41. The Liano mark is valid, incontestable, and subsisting on the Principal Register.

42. Cesari has continuously used the Liano Mark in commerce in the United States and has not abandoned it.

43. The "Liano" trademark registration is conclusive proof of Cesari's exclusive right to use the "Liano" trademark in commerce for wines.

**Peju's First Attempt to Register the Infringing Mark "Liana"**

44. On February 10, 2003, Peju attempted to register the name "Liana" as a trademark with the PTO the name "Liana" covering "wines" in International Class 33 ("First Application").

45. On October 20, 2003, Cesari opposed Peju's First Application, alleging likelihood of confusion with the "Liano" trademark based upon Cesari's priority of use and priority of registration, Opposition No. 91,158,374 (the "First Opposition").

46. On February 17, 2004, Cesari filed a motion for judgment on the pleadings, which was construed by the Trademark Board as a motion for summary judgment. On March 4, 2004, Peju filed a response to Cesari's motion. On July 20, 2004, the Trademark Board rendered its decision granting summary judgment in favor of Cesari and against Peju.

47. The Trademark Board found that "[Cesari]'s pleaded mark LIANO and applicant's mark LIANA, are almost identical." Further, the Trademark Board found that "there is no genuine issue that the parties' goods are identical" and "neither [Cesari]'s pleaded registration nor involved application has restrictions as to the channels of trade or purchasers."

48. The Trademark Board then entered judgment in favor of Cesari and refused Peju's First Application.

49. On September 28, 2004, the PTO issued a Notice that Peju had abandoned its application for the trademark Liana as a result of the Trademark Board decision that its mark was likely to cause confusion with Cesari's "Liano."

**Peju's Second Attempt to Register "Liana" as a Trademark**

50. On August 2, 2016, the PTO published U.S. Trademark Application with Serial Number 86937324 (the "Second Application") filed on behalf of Peju on March 11, 2016, signed by Anthony Peju as CEO, seeking to register as a trademark the identical "Liana" name that the Trademark Board had already rejected in 2004, as being virtually identical and confusingly similar to Cesari's registered "Liano" mark:

**PEJU'S APPLICATIONS - MARK REPRESENTATION**

| 2003-Peju's First Application | 2016-Peju's Second Application |
| --- | --- |
| LIANA | LIANA |

**CESARI'S REGISTERED TRADEMARK**

# LIANO

51. The Second Application, like the first, is directed to International Class 33 covering wines.

52. As set forth above, the Second Application seeks to register as a trademark the identical name "Liana" in the identical class of goods, International Class 33, that the Trademark Board already rejected in 2004.

53. The applicants in the First and Second Applications are the same. Both the First and Second Application were signed by Anthony Peju, who represented to the PTO that he was the Chief Executive Officer of the applicant under the Second Application, and a partner of the applicant under the First Application.

54. Although a different Peju entity appears to have filed the Second Application, the individuals listed as owners of that entity, Herta Peju and Anthony Peju, are the same physical persons who filed the First Application. Both applicants in the First Application and Second Application have listed the identical address of 8466 St. Helena Highway, Rutherford, CA in their applications, which is the same address listed for all three Peju defendants in this action.

55. In light of the 2004 Trademark Board's decision, which Peju did not challenge in any court, the renewed trademark application was filed in bad faith. For example, Peju never

informed the trademark examiner that the Trademark Board already had ruled against Peju and in favor of Cesari and previously rejected registration of the identical name "Liana" that is the subject of the Second Application, and which the Trademark Board found to be confusingly similar with Cesari's federally registered "Liano" mark.

56. In addition, before filing this application, as early as January 4, 2016, Peju's new trademark lawyer ran a search which showed him and Peju that Cesari continued to have a registration for the Liano mark. Further, Peju's trademark lawyer warned Peju that there were rights that could be claimed against Peju if it used the Liana name. Peju's trademark lawyer also informed Peju that it was their "experience that Italian wineries will generally not claim infringement in the US by US wineries unless they have a trademark registration."

57. On February 18, 2016, Peju's trademark lawyer informed Peju again that adopting the name Liana for wines would present "some higher than normal risk."

58. Despite that and despite having previously received the TTAB Decision, Peju went ahead and on March 11, 2016, an application was filed on behalf and bearing the signature of Anthony Peju seeking to apply for the mark "Liana" for wines, declaring that Peju had a bona fide intent to use that mark in commerce. In its application, Peju failed to disclose to the Patent Office that it had previously applied for the same mark, which had been rejected on the grounds that Liana was likely to cause confusion with Cesari's Liano mark.

59. Cesari is entitled to disgorgement from the Defendant under the Lanham Act and state law.  Cesari is also entitled to disgorgement as a result of the bad faith, reckless disregard, and willful infringement of Peju in unlawfully using the name "Liana" to market and sell wines, and by Peju's attempt to register the name "Liana" as a trademark in International Class 33.

**Peju's Reckless Disregard of the Trademark Board's 2004 Decision, and Willful Infringement of Cesari's Trademark**

60. On or about May 2014, Peju, began to advertise, market and sell wine in commerce throughout the Unites States using the infringing name "Liana."

61. Peju did not have authorization from Cesari to use the Liana mark to market and sell wines.

62. Despite that, in late 2016, Peju set up a website entitled *lianaestates.com* to sell and market the "Liana" wines throughout the Unites States.

63. Starting in late 2014, Peju also sold and marketed the infringing Liana wines through another website called *peju.com*, as well as by telephone and various other advertising and print materials, including through various prints of the word Liana placed in front of vineyards.

64. This marketing and selling also was done without authorization from Cesari.

65. Peju used the Liana mark with reckless disregard for Cesari's rights in the LIANO mark, as fully set forth in the 2004 Board Decision.  In the alternative, Peju acted in bad faith, and willfully.

66. Additionally, before launching the "Liana Estates" brand, Peju was again informed by its counsel of the risks involved in using the name Liana.

67. As soon as Peju's 2016 trademark application became public, Cesari learned of Peju's conduct and immediately opposed Peju's trademark application for Liana. Despite Cesari's objections, Peju nonetheless launched the Liana estates brand.  Peju's conduct in disregarding the Cesari's trademark rights constitute bad faith, willfulness and reckless disregard for Cesari's rights under the law.

68. The Trademark Board had already found that Peju's use of "Liana" to market and sell wines was likely to cause confusion for consumers, given that "Liana" is virtually identical to "Liano" and that both are used for wine products.

69. Despite all of that, Peju continued to sell Liana branded wines throughout the pendency of the litigation.

70. Between 2014 and the present date, Peju sold at least 14,000 cases of Liana wine, amounting to over 160,000 bottles, making a substantial profit and being unjustly enriched by the use of a mark that infringed on Cesari's rights.

**Peju's Cover Up of Its Conduct and Its Discovery Misconduct Provide Further Evidence of Its Bad Faith, Reckless Disregard and Willfulness**

71. Instead of immediately ceasing any further use of Liana upon receiving Cesari's opposition to the 2016 Trademark Application, Peju persisted with its infringing use, including by beginning to sell thousands of Liana branded wines several months after Cesari's opposition was filed.

72. Even after the instant federal litigation was filed, Peju continued to ignore Cesari's rights, and persisted with its infringing use of the Liana name to market and sell wines.

73. Concurrently, Peju tried to delay this proceeding and make resolution of this litigation more expensive. For instance, one of the Peju daughters, Ariana Peju, falsely represented in this proceeding and to Cesari that she was the one who decided to use the Liana name in 2016 and that she knew nothing about the existence of the Liano mark until after this litigation was filed.

74. In fact, Ariana Peju's representations were false. Peju had known of Cesari's mark since 2003, and was repeatedly told by its lawyers in 2016 of the risks involved in using Liana.

75. Peju's cover-up did not stop there. Peju tried to conceal the existence of this litigation from its accountants and falsely represented to them on April 6, 2017, that the Peju family knew nothing about any actual or possible claims being or having been asserted against Peju Province Winery or its affiliates. Indeed, as a result of these false statements, Peju's Controller resigned because he felt that he could not, knowing of the existence of this lawsuit and consistent with his obligations as a CPA, represent that no claims had been asserted when in fact this lawsuit had been filed. By contrast, the entire Peju family had no problem certifying to its accountant the false statement that no claim had been asserted against them.

76. Peju's false representations to their accountants are consistent with Peju's habit, pattern and practice, and *modus operandi* of making false representations to cover up Peju's wrongful conduct.

### Discovery Misconduct

77. This action was filed on February 6, 2017.

78. Immediately after filing this action, Cesari sought leave to move for pre-discovery partial summary judgment on the issue of liability for trademark infringement, based on the 2004 Board Decision, which had already found that Peju's use of the Liana mark to market and sell wines was likely to cause confusion.

79. The Court found in favor of Cesari on its motion respect of Peju Province Winery LP, and deferred consideration as to the other defendants pending discovery regarding the two other entities names in this suit, Peju Corporation and Peju Family Operating Partnership.

80. Cesari immediately sought leave to begin discovery, which was delayed as a result of the Peju's counsel's representations that no discovery should be had pending settlement negotiations.

81. In fact, instead of engaging in good faith settlement negotiations, as discussed during a Court conference held on January 4, 2018, Peju disappeared and did not even respond to Cesari's settlement offer, not even to reject it.

82. Instead, Peju took advantage of the time the Court generously granted in the belief that the parties would be exchanging settlement proposals, to further delay this case while it continued selling the infringing Liana wines.

83. When Cesari received permission to begin serving discovery, it immediately propounded three sets of discovery requests to each of the Defendants, covering all information and documents necessary to bring this case to a prompt resolution, including information and documents relating to the issue left open by the Court in its December 2017 ruling on Cesari's motion for partial summary judgment.

84. Cesari's discovery requests included requests for the most basic information relevant to the remaining issues in the case, such as the total number of sales of LIANA-marked wines, the costs of generating those sales, as well as the control structure of the overall Peju organization.

85. Cesari's first set of requests for documents was served on February 8, 2018.

86. Many months after the requests were first served, the Defendants produced only unfounded objections and 14 documents consisting primarily of irrelevant public records, clearly used as a filler to claim some production had been made, when in fact none of the requested documents were produced.

87. On May 29, 2018 Cesari began to request permission to file a motion to compel the production of the documents and information requested in discovery.

88. The Defendants opposed and the Court held a lengthy teleconference on June 12, during which the Court orally ordered Peju to produce the responsive discovery.

89. Despite that order, Peju continued to refuse to produce any discovery.

90. As a result, Cesari was forced to incur yet more costs and fees to seek the court's intervention, resulting in an Order of the Court on July 10, 2018 indicating that Cesari would be given leave to file a motion to compel if Peju failed within one week to produce all discovery ordered.

91. Instead of complying with their discovery obligations and the Court's order, between July 16 and 18, 2018, Peju produced six more irrelevant documents and failed to produce any of the documents requested by Cesari in discovery.

92. In the face of Peju's recalcitrance, Cesari filed numerous additional requests to the Court for permission to move to compel the production of the overdue discovery and for sanctions, a procedure required under the Court's rules.

93. Instead of making its production or explaining to the Court why the Peju defendants refused to make the requested production, Peju falsely represented to the Court for an extensive period of time that they had produced everything.

94. As a result of Peju's misrepresentations, Cesari had to expend an extraordinary amount of time and resources to try to obtain discovery that should have been voluntarily turned over. Instead, Peju persisted in its refusal to provide any of the requested documents.

95. Peju also obstructed Cesari's attempt to obtain testimonial discovery by refusing to produce a properly prepared witness to answer the questions in Cesari's Rule 30(b)(6) deposition notice. Peju's discovery misconduct regarding the Rule 30(b)(6) deposition caused

Cesari to expend substantial costs and fees and prejudiced its ability to timely obtain the testimony it sought from Peju.

96. Thereafter, Cesari propounded to each of the Peju defendants several interrogatories directed to matters at issue in the case, including the Peju defendants' conclusory assertion of affirmative defenses, which were unaccompanied by any facts, such as laches, acquiescence and other similar defenses.

97. Instead of providing the information requested, Peju once again obstructed discovery by refusing to provide any of the information requested.

98. The Court then scheduled a hearing for January 17, 2019 to address, among other things, Cesari's requests to compel Peju to produce its discovery. Two days before the hearing, Peju produced 13 more documents, none of which satisfied Cesari's discovery obligation in response to the pending discovery requests.

99. During the January 17, 2019 hearing, Peju represented to the Court that the reason they had not produced is that they could not understand what Cesari had been requesting. In fact that statement was false: in the nearly one year between service of the requests and the conference Peju never informed Cesari it could not understand the requests. Moreover, Cesari's requests were simple, not containing any matter that would have caused difficulties in understanding what each of the Peju entities was being asked to produce.

100. During the course of the hearing on January 17, 2019, the Court again ordered Peju to promptly produce to Cesari the discovery it requested.

101. Instead of complying with the Court's order, Peju has continued to obstruct and has only made a small supplemental production of documents that again contains none of the documents requested by Cesari, now more than a year ago.

102.     In addition, Peju was ordered by the Court to produce to Cesari certain privileged documents relating to Attorney Gerien, as a result of Peju's privilege waiver that the Court found at the January 17, 2019 conference. Despite the Court's clear ruling, Peju refused to produce the documents ordered by the Court and instead produced only a subset of the documents long after its production obligation were due.

103.     As a result Cesari repeatedly asked Peju if it was withholding any documents on the ground that they were outside the privilege waiver and if so to provide a privilege log listing the documents being withheld. In addition, Cesari's prior discovery requests also included information and communications that Peju would have been required to reflect in a privilege log. Despite repeated requests for a privilege log, Peju has refused to provide one.

104.     This conduct has caused Cesari to expend unnecessary time and resources simply to obtain materials it had a right to obtain from Peju without any court intervention. Indeed, *all of the costs and fees* Cesari incurred in 2018 resulted from Peju's unreasonable discovery obstruction and misrepresentations to the Court as to its compliance with discovery.

105.     In addition, Cesari has been substantially prejudiced by Peju's misconduct because of the delay it caused to the resolution of the remaining issues in this litigation. For instance, more than two years after Peju filed its answer, Cesari still has no knowledge of the factual or legal bases for any of the affirmative defenses pled by the Peju defendants.

106.     Cesari has also been materially prejudiced by the Peju defendants' discovery obstruction because it remains unable to ascertain the true facts about the quantity of infringing wines the Peju defendants sold, and which entity specifically made the sales. This information has been impossible to ascertain because of the Peju defendants' refusal to provide the requested discovery.

107.    At the January 17, 2019 hearing, the Court asked "[H]ow many cases of Liana wine has the defendant sold?" and the Defendants' attorney responded "Again, I don't have that figure at my fingertips, your Honor." The reason the Peju's counsel did not have this information at his fingertips after two years of litigation is because they refused to provide discovery about that issue.

108.    This is merely exemplary of the intransigence that characterized the Peju defendants' discovery conduct in this case, which has caused this litigation to be substantially more expensive than it would have been, had the Peju defendants promptly complied with their discovery obligations.

109.    In February of 2019 and continuing through April 2019,[2] the Defendants finally produced some evidence of individual sales.

110.    This production came only after the Court ordered production at the status conference in January 2019, and after yet further innumerable requests for compliance with Cesari's discovery requests.

111.    Despite all of these efforts, as of the end of April 2019, Cesari still has received virtually none of the records it sought in discovery, and has no way to ascertain with certainty the full scope of the Peju defendants' infringing sales, or whether it is still selling infringing wines.

112.    Additionally, the Defendants have resisted every attempt to obtain the evidence that they intend to rely on in resisting issue preclusion as to the other two Defendants, despite their mandatory disclosure obligations under Rule 26(a) and their other discovery obligations under the rules and the Court's prior orders.

---

[2] Supplemental productions were received on March 1 and March 19, 2019.

113.     The Defendants have also failed to produce *any* email communications in response to Cesari's document requests bearing on the discovery requests.

114.     Peju's conduct throughout the litigation, its efforts at making this litigation extraordinarily expensive, while at the same time depriving Cesari of the critical information it needs and is entitled to under the Federal Rules to bring the remaining issues in this case to a prompt resolution, provide further evidence of Peju's willfulness, bad faith and reckless disregard for Cesari's rights and for the Court's processes, and entitle Cesari to attorney's fees, costs and to trebling of the disgorgement.

115.     In addition, the Peju defendants should be precluded from asserting any defense as to which they have refused to provide discovery and should be precluded from objecting to the extension of the Court's collateral estoppel ruling to Peju Province Corporation and Peju Family Operating Partnership in light of the Peju defendants' refusal to provide any discovery bearing on those issues for over a year.

**FIRST CAUSE OF ACTION**
**(Federal Trademark Infringement and Unfair Competition – 15 U.S.C. §§ 1114, 1125(a),**
**1117 – Against All Defendants)**

116.     Cesari incorporates by reference and realleges each of the allegations set forth above as if fully set forth herein.

117.     Peju's actions described above and below constitute use in commerce of a reproduction, counterfeit, copy or colorable imitation of Cesari's federally registered trademark, "Liano," in connection with the sale, offering for sale, distribution or advertising of goods and services on or in connection with which such use is likely to cause consumer confusion, deception or mistake as to source, sponsorship or approval of Peju's aforesaid goods or services in violation of federal law.

118.     Peju's actions described above constitute use in commerce of a word, name or device and false designation of origin which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection or association of Peju with Cesari's Liano mark or as to the origin, sponsorship, or approval of the goods offered in connection therewith in violation of federal law.

119.     As set forth above, Cesari is the registered owner of the "Liano" trademark.

120.     Despite knowledge that Cesari is the owner of the "Liano" trademark, and despite the 2004 Decision by the Trademark Board, Peju, without authorization from Cesari, has used and continued to use beginning on or about 2014 and continuing through on or about July 2018 the infringing "Liana" name in connection to Peju's marketing, sale and distribution of wines in the United States.

121.     Peju's unauthorized and willful use of the infringing "Liana" name in connection with their production, marketing, sale and distribution of wines is likely to cause confusion and mistake for the public, and is likely to deceive consumers as to the source or origin of Peju's wines.

122.     The Court has already found in this case that Peju Province Winery's use of the "Liana" mark to market and sell wines is likely to cause confusion based on the application of collateral estoppel from the 2004 Board Decision.

123.     Each individual Peju defendant is liable for any infringement of the other because the Peju wine business is an unregistered partnership composed partly of the three entities that are named defendants in this action.

124.    The three entities have an actual or apparent partnership by which they operate their wine business (the "Peju Enterprise"). This single enterprise constitutes the Peju winery business.

125.    The three entities have authority to bind one another in business transactions with third parties.

126.    The three entities exercise joint control over the infringing Liana-branded products.

127.    By their acts, Peju has unjustly been enriched by substantial profits and gains to which they are not entitled and which resulted from the willful and bad faith infringement of the Liano mark, and from their reckless disregard for Cesari's rights in the federally registered Liano mark.

128.    Peju has unlawfully refused to cease and desist from its infringing activities.

129.    The Peju defendants are all jointly and severally liable for the trademark infringement resulting from their willful, bad faith, and reckless use of the "Liana" name to market and sell wines.

130.    The Peju defendants are all liable to Cesari for trademark infringement under theories of vicarious and contributory liability, including, but not limited to, under the single enterprise liability theory, vicarious infringement liability theory, contributory infringement and any similar theory. The three entities named in this action are all owned and controlled by the Peju family, and all operate together as a single enterprise. Indeed, throughout the course of this action, the Peju defendants have never differentiated one entity from the other,

not even in the limited production they have provided, which has been made on behalf of all three entities without distinction.

131.     In addition, Peju Province Corporation and Peju Family Operating Partnership should be precluded from disputing the extension of the Court's collateral estoppel ruling to each of those entities pursuant to Fed. R. Civ. P. 37(b), (c) and (d), and 26 as a result of their willful, bad faith, and intentional refusal to timely provide the discovery requested and to produce the relevant information and documents pursuant to their mandatory initial disclosures obligations.

132.     By reason of the foregoing, Cesari is entitled to disgorgement from the Peju defendants, to trebling, as well as to recover all fees and costs resulting from Peju's willful and bad faith acts of infringement, and their reckless disregard for Cesari's trademark rights.

133.     Peju's infringement and unfair competition is exceptional as Peju has been aware since 2003 that it is not permitted to use the term "Liana" to market and sell wines. Indeed, Peju abandoned its application for the Liana mark in September 2004 as a result of the Trademark Board's findings that Liana was likely to cause confusion with Cesari's federally registered mark Liano.

134.     Despite having gone through litigation with Cesari once and having lost, Peju nonetheless chose to disregard the Trademark Board's rulings and willfully infringe Cesari's rights.

135.     Peju's bad faith, willful conduct and reckless disregard for Cesari's rights and for legal processes persisted throughout this case. Indeed, even after the Court in this action issued its ruling against Peju Province Winery, in which it found that it could not foresee a

scenario in which the other two named defendants could use the Liana name, Peju nonetheless continued to sell the infringing wines, without any regard for the Court's ruling.

136.     As a result of its exceptional conduct in this case and willful and/or bad faith violations, Cesari is entitled to attorney's fees and costs.

137.     Cesari is also entitled to disgorgement of profits, and trebling.

138.     The infringement was undertaken willfully, in bad faith, and with reckless disregard for Cesari's rights.

139.     All three Defendants should be jointly, severally, vicariously and contributorily liable for all relief requested herein as a result of the Peju defendants' trademark infringement.

140.     Unless the Court awards disgorgement and trebling, the Peju defendants will be unjustly enriched by their disregard for Cesari's trademark rights.

141.     Indeed, unless the Court awards the remedies requested herein, a trademark defendant will find it more profitable to continue infringing and disregard others' trademark rights, rendering the process of obtaining and maintaining a federal trademark registration entirely meaningless, and the process of enforcing a federal trademark in court pointless, despite the extraordinary expense.

**Further Allegations in Support of Vicarious Liability**

142.     Each Peju defendant qualifies as a member of an actual partnership between the three named entities, as that term is used in the California Uniform Partnership Act,[3] whereby they jointly own and operate the Peju winery business.

---

[3] The Act provides that "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." Cal. Corp. Code § 16202.

143.     Among other things, Peju Province Winery L.P. currently owns the real property on which the Peju winery is located, whereas Peju Family Operating Partnership owns all personalty of the Peju business, including intangible property.

144.     Peju Corporation exists as a holding company that is the general partner in the other two limited partnerships and is solely owned and controlled by Anthony Peju, who is the legal and the de facto control person of the entire business.

145.     Each entity has the authority to bind the others in transactions, as (for example) Peju Province Winery LP, by Anthony Peju, bound its co-defendants in their retainer agreement with new counsel in this action.

146.     The Defendants exercise joint control over the products and instrumentalities of the infringement: Peju Province Winery LP owns the realty involved in the production of the infringing wine (including the necessary manufacturing fixtures) and Peju Family Operating Partnership owns the associated personalty (including the unsold stock and all necessary intellectual property contributing to the infringement).

147.     Peju Family Operating Partnership is the successor in interest of all of the personal property of Peju Province Winery LP, by formal written instrument endorsed on behalf of both entities by Anthony Peju.

148.     The Defendants each share in the profits of the infringing product. In particular, their accountancy system combines the sales and profits of wine production without distinction among the entities.

149.     As result of the foregoing, Peju Province Winery LP is estopped from litigating the question of whether (i) if it has sold infringing wine, it is liable for infringement,

and (ii) if other members of the Peju entities have sold infringing wine, it is liable vicariously for its joint production and control of the infringing product.

150.    Peju Province Winery LP is liable as a trademark infringer for any sale by the Peju business of Liana wine.

151.    By reason of their relationship with Peju Province Winery LP, the other members of the Peju business are likewise liable for trademark infringement for any sale of the infringing Liana wine.

**Further Allegations in Support of Extension of Collateral Estoppel to Peju Province Corporation and Peju Family Operating Partnership LP**

152.    The Court's finding on likelihood of confusion by collateral estoppel against Peju Province Winery LP is equally binding on Peju Province Corporation and Peju Family Operating Partnership LP because these three entities constitute an integrated and inseparable business, and none of the entities is distinguishable from the other.

153.    It would be inequitable to allow these two entities, which are owned and controlled by Anthony Peju, and which operate as a single integrated business and enterprise to escape the collateral estopped effect of the 2014 Board decision simply by virtue of their corporate shield.

154.    In addition, at the time of the 2014 Board decision, Peju Province Corporation, which is solely owned and controlled by Anthony and Herta Peju, fully owned and controlled Peju Province Partnership, including by controlling all aspects of the litigation before the Patent Office that resulted in the 2004 Board Decision.

155.    Similarly, Peju Province Corporation and Peju Province Winery, both of which are controlled by Anthony Peju, also control the litigation in this action. For instance, on or about June 2018, Anthony Peju, acting as the principal for all three of the named Defendants,

retained new counsel to represent the Defendants in this litigation. Throughout the course of this litigation, the three Defendants have never distinguished between one entity and the other, have always referred to the three entities as a single entity, have produced the same documents on behalf of all three entities, and have admitted all three entities operate as the Peju Province Winery business.

156.     As a result, Peju Province Corporation and Peju Family Operating Partnership should be equally bound by this Court's decision against Peju Province Winery finding likelihood of confusion by collateral estoppel.

**Further Allegations in Support of Contributory Liability**

157.     In addition to jointly bringing about the trademark infringement above, the Defendants are contributorily liable because they have joint knowledge that the Liana mark infringes on Cesari's intellectual property, and nevertheless permitted and induced the sale of the infringing product.

158.     Peju Family Operating Partnership undertook to obtain product and rent vineyards from Peju Province Winery LP in order to sell the infringing product, in addition to whatever other formal or informal agreements were reached to facilitate the sale of the infringing product.

159.     Peju Corporation likewise participated in the creation, storage, and sale of the infringing product with the purpose of obtaining the profits.

160.     Knowingly contributing to and inducing sales of infringing wines, as each entity has done, regardless of which formally conducted the sale, creates equal liability for the profits of the infringing sale.

161.     Accordingly, each entity is jointly and severally liable for the profits attributable to the infringing sales.

**Further Allegations in Support of Single-Enterprise Liability**

162.     The three defendants named in this action are not truly separate business entities, but are part of a single business enterprise, organized and controlled by Anthony Peju, through Peju Province Corporation, which controls the other parties as the general partner of the other two entities.

163.     The evidence reveals a single, closely-knit and inseparable enterprise, which markets and sells wines primarily from its headquarters at 8466 St. Helena Highway in Napa, California, and generally does business as "Peju Province Winery."

164.     The affairs of the three Defendants are completely intermingled, and it would be impossible to dissect any specific transaction attributable to one or another entity, as all entities are simply part and parcel of the same business. Three Defendant entities have integrated their resources and operations to achieve a common business purpose, namely the marketing and selling of wines.

165.     The evidence also shows that both Peju Province Winery L.P. and Peju Family Operating Partnership L.P. are controlled by its sole general partner, Peju Corporation, which in turn is owned and controlled by Tony Peju and his wife. Peju Corporation dominates the affairs of the other two named defendants, which are devices for Peju Corporation to carry out the business enterprise.

166.     The three Defendants have no independent capitalization aside from the single enterprise capitalization, commingle funds and other assets amongst themselves, have identical equitable ownership, use the same offices and employees, use one another as conduits

for the affairs of the same enterprise, disregard corporate formalities, do not segregate corporate records, and have identical officers and directors.

167.     Accordingly, under California law, each entity is liable for the debts and judgments against the others.

**Further Allegations in Support of Veil Piercing, Alter Ego Liability**

168.     Cesari incorporates by reference and realleges each of the allegations set forth above as if fully set forth herein.

169.     For all the reasons already set forth above, the Defendants are all equally bound by this Court's likelihood of confusion ruling under theories of veil piercing, alter ego and any other similar theory.

170.     For all the reasons already set forth above, the Defendants are all equally liable for trademark infringement under theories of veil piercing, alter ego and any other similar theory.

**Further Allegations in Support of Attorneys Fees**

171.     Cesari incorporates by reference and realleges each of the allegations set forth above as if fully set forth herein.

172.     The Peju defendants are jointly and severally liable for Cesari's attorney's fees in litigating this action, as this is an "exceptional case" within the meaning of the Lanham Act, as interpreted by the courts.

173.     In particular, the conduct of discovery in this case was "exceptional" in the sense that it "stands out from others." In addition, the Peju defendants' discovery obstruction was undertaken willfully and in bad faith to obstruct Cesari's ability to obtain a speedy

resolution of the issues remaining in the case, and to ascertain the exact number of infringing sales.

174.    By way of example, as discussed above, it took until February 2019 (in a case filed in March 2017, wherein no motion to dismiss was ever made) for Cesari to obtain *a few sales records* in a case where one of the key remaining issues is the total number of infringing sales. Even then, after extraordinary attempts by Cesari to obtain these records with and without the Courts' intervention, the Peju defendants have continued to obstruct by refusing to produce all but a handful of the records requested, making it impossible for Cesari to ascertain the total number of infringing sales.

175.    In addition to obstructing duly served discovery, the Defendants also shirked their duty under Rule 26 to make disclosures of the documents relied on in resisting the application of collateral estoppel and in failing to produce any information regarding their purported affirmative defenses.

176.    The Peju defendants also misrepresented their knowledge regarding Cesari's Liano mark for a second time, falsely stating that the first indication their former trademark counsel provided them about Cesari's mark ***was when this action was filed,*** when in fact they had known since 2003, and were then informed again by their new trademark counsel in early 2016, and yet again in August 2016, before they had launched their "Liana Estates" branding campaign.

177.    As a result of the total litigation conduct exemplified by the above, this case is "exceptional" and Cesari should be awarded all its costs and fees.

178.    Each Defendant is jointly and severally liable for Cesari's attorney's fees and costs.

179.     In addition, as a result of the Peju's defendants' refusal to provide any discovery regarding the actual costs incurred in making the infringing sales, the Peju defendants should be estopped or precluded from receiving any cost deductions from the gross infringing sales revenue, which Cesari estimates at over $6 million.

180.     In sum, Cesari seeks and should be awarded disgorgement of all profits, trebling, costs and attorney's fees.

181.     Specifically, Cesari seeks disgorgement in the amount of $5,948,460 constituting the total infringing sales Cesari has been able to estimate were actually made by the Peju defendants from 2014 to the present date. Cesari may seek further disgorgement of any other infringing sale it is able to ascertain through the conclusion of this case.

182.     Cesari seeks trebling in the amount of an additional $11,986,920 and any further amount to reflect any additional infringing sales it is able to find through the end of this litigation.

183.     Cesari seeks costs of litigation under the Lanham Act in the amount of $28,470.74 through February 2019, and any further amounts as may have been or will be incurred from that date through the end of this litigation.

184.     Cesari seeks attorney's fees in the amount of $410,063.37 and $2,681.46 for its U.S. litigation counsel through February 2019, plus any further amounts as may have been or will be incurred from that date through the end of this litigation, including a 15% premium that Cesari has agreed to pay its counsel at the end of this litigation.

185.     Cesari seeks attorney's fees in the amount of approximately $102,515.75 for the legal fees incurred with its Italy-based counsel through February 2019, plus any further amounts as may have been and will be incurred from that date through the end of this litigation.

186.     Cesari seeks any further attorney's fees it has incurred or will incur resulting from the Peju Defendants' infringement and conduct in this case.

### SECOND CAUSE OF ACTION
### (New York Trademark Infringement And Unfair Competition – Against All Defendants)

187.     Cesari incorporates by reference and realleges the allegations set forth in above as though set forth in their entirety herein.

188.     Cesari owns all right, title, and interest in and to the "Liano" trademark as aforesaid, including all common law rights in such mark.

189.     The aforesaid acts by Peju constitute trademark infringement in violation of the common law of the State of New York.

190.     Peju has made and will make substantial profits and gains to which it is not entitled.

191.     Peju's infringement upon Cesari's exclusive rights was willful, in bad faith, and done with knowledge of Cesari's rights and mark, as demonstrated by the facts alleged above.

192.     Accordingly, Cesari requests disgorgement, trebling of disgorgement, punitive damages, costs and attorney's fees.

193.     Cesari incorporates by reference all allegations set forth throughout this Complaint above, including under Count I, as providing a right to relief under New York law.

### PRAYER FOR RELIEF[4]

WHEREFORE, Cesari respectfully requests this Court to enter judgment in its favor as follows:

---

[4] Cesari has withdrawn its application for a permanent injunction because Peju represented to have ceased use of the LIANA mark in response to this litigation and that it will not resume use. Should Peju resume use, Cesari will reinstate its request for equitable relief by appropriate application to the Court.

A.    Declare that Defendants' unauthorized conduct violates Cesari's rights under the Lanham Act (15 U.S.C. § 1051 *et seq.*), the common law of New York and any other applicable state laws;

B.    Order Peju to disgorge and account to Cesari all of Peju's profits arising from Peju's acts of willful, bad faith, and reckless trademark infringement and unfair competition, and that Cesari be awarded three times Peju's profits, costs and attorney's fees under 15 U.S.C. § 1117, plus prejudgment interest;

C.    Cesari's award should also be trebled to account for the serious litigation misconduct described herein;

D.    Award Cesari its costs and disbursement incurred in connection with this action, as well as in connection with all proceedings in the PTO in connection with Peju's Second Application, including all costs, attorneys' fees and expenses, on the ground that this is an exceptional case under 15 U.S.C. §1117;

E.    Award Cesari disgorgement, punitive and/or enhanced disgorgement, costs and attorney's fees under New York law; and

F.    Award Cesari such other and further relief as this Court deems just and proper.

                                Respectfully submitted,


Dated: March 2, 2020              By:      /s/ *Valeria Calafiore Healy*
New York, New York              _____

                                        Valeria Calafiore Healy, Esq.
                                        (SDNY BAR NO. VC3773)
                                        valeria.healy@healylex.com
                                        HEALY LLC
                                        154 Grand Street
                                        New York, New York 10013
                                        Telephone:    (212) 810-0377
                                        Facsimile:    (212) 810-7036

                                        *Counsel for Plaintiff Cesari S.r.l.*