UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
CESARI S.R.L.,

              Plaintiff,

       - against -

PEJU PROVINCE WINERY L.P., PEJU
PROVINCE CORPORATION, and PEJU
FAMILY OPERATING PARTNERSHIP, L.P.,

           Defendants.
------------------------------------X

**MEMORANDUM AND ORDER**

17 Civ. 873 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

The deposition of the CEO of plaintiff, Gianmaria Cesari, is scheduled for December 14, 2020. It is to start at 8:00 a.m. EST to accommodate the deponent, who is in Italy, and it is to last for no more than seven hours. Defendants' noticing of the deposition under both Rule 30(b)(1) and Rule 30(b)(6) of the Federal Rules of Civil Procedure resulted in considerable back-and-forth between counsel. As the Court observed, in the context of this case, the distinction between the two is largely academic because Mr. Cesari's testimony would be binding on plaintiff regardless of how the deposition is noticed. The specific subject of this Order is the appropriateness of the 32 topics for examination proposed in defendants' Rule 30(b)(6) deposition notice. (ECF No. 248.)

Before addressing the subjects approved for examination at the upcoming deposition, some background is required.

## BACKGROUND

This is a straightforward case. Plaintiff, Cesari S.r.L. ("Cesari"), is an Italian winemaker selling wine using the registered "LIANO" trademark who sued three American entities affiliated with the Peju family for selling wine associated with the name "LIANA." In 2004, the Trademark Trial and Appeal Board ("TTAB") of the U.S. Patent and Trademark Office issued a summary judgment decision rejecting defendant Peju Province Winery L.P.'s trademark application for LIANA after finding that it was likely to cause confusion with Cesari's valid registered LIANO trademark. Nonetheless, one or more the affiliated defendants continued to use the LIANA mark.

Early in the case, plaintiff moved for partial summary judgment to preclude defendants from relitigating the issue of likelihood of confusion in light of the TTAB ruling. The Court granted that motion in December 2017 insofar as it applied to Peju Province Winery L.P., the defendant named in the TTAB proceeding. Cesari S.r.L. v. Peju Province Winery L.P., No. 17 Civ. 873, 2017 WL 6509004 (S.D.N.Y. Dec. 11, 2017). Following that ruling, defendants represented to this Court in a discovery status update that "the **only** issues remaining in this case are whether Peju Province Corporation and/or Peju Family Operating Partnership, L.P. controlled

Peju Province Winery L.P. in the previous TTAB litigation, whether Peju Province Winery L.P. controls one or both of these entities in the instant litigation, and whether Plaintiff is entitled to any remedies, and, if so, the nature of those remedies." (ECF No. 55 (emphasis added).)  According to defendants, the scope of discovery should be limited because "only information regarding these specific issues is relevant or proportional to the needs of this case." (Id.)

In April of this year, the Court revisited the scope of discovery in a case management conference.  During that conference, counsel for defendants Joel MacMull represented to the Court that if defendants' contemplated motion to dismiss on statute of limitations grounds were to be denied,[1] then defendants "would want to engage in some discovery on the equitable claim of laches, acquiescence, and waiver" and "would want to depose the plaintiffs on what they knew, when they knew it, and why they subsequently didn't take any action for more than a decade." (ECF No. 210 at 24.)  The Court then asked Mr. MacMull whether, besides taking a deposition of plaintiff "on the affirmative defenses of laches and estoppel, what else, if anything, does Peju need to do to bring the discovery portion of this case to an end?" (Id. at

---

[1]     Defendants never filed a motion raising a statute of limitations defense.

28.)  In response, Mr. MacMull stated that "[w]ith respect to fact discovery, I think that's it" and that "there is nothing that leaps out at me as being an obvious tributary of discovery." (<u>Id.</u>)

The parties initially set November 18 as the date for plaintiff's deposition. (<u>See</u> ECF No. 233 at 2.)  After several discovery disputes were brought to the Court's attention in late October (ECF Nos. 233-236), the Court held a status conference on October 30 at which those issues were resolved.  Thereafter, defendants raised additional disputes on November 9 (ECF No. 237), and the Court provided written guidance on those issues on November 12 so that the deposition could go forward as scheduled (ECF No. 240).  Following the written guidance, plaintiff produced additional documents. (<u>See</u> ECF No. 253 at 1 n.1.)  After receiving the materials, defendants cancelled the deposition on the Friday before the scheduled Wednesday deposition.  (ECF No. 241 at 1 n.1, 2 n.2.; <u>see</u> ECF No. 253 at 1 n.1.)

On November 18, defendants served a Rule 30(b)(1) deposition notice for Mr. Cesari and a Rule 30(b)(6) notice for plaintiff listing 31 topics for examination.  (ECF Nos. 241, 241-1, 241-2, 241-3.)  Defendants noticed the deposition for November 24, less than four business days from the date of service.  (<u>Id.</u>)  This prompted plaintiff to seek a

protective order from the Court on November 19.  (ECF No. 241.)  Instead of responding to plaintiff's motion and attempting to justify their deposition notices, defendants again cancelled the deposition on the evening of November 20, the Friday before the scheduled Tuesday deposition.  (ECF Nos. 242, 242-1.)

On November 23, the Court issued an Order governing how the deposition(s) would proceed.  That Order clarified that defendants would be limited to a single seven-hour examination of plaintiff's CEO.  (ECF No. 243.)  It further directed that if defendants wished to notice a Rule 30(b)(6) deposition, then "[i]n light of the overbroad and objectionable scope of defendants' original Rule 30(b)(6) deposition notice," defendants must submit a proposed list of examination topics for the Court's consideration with "justif[ications] . . . in the form of a written explanation following each and every subject they propose."  (Id.) Finally, the Court warned counsel that while it "has refrained from issuing sanctions in this case up to now[, c]ounsel should not assume that the Court's reluctance will continue," or that the "sanction would not be directed to [counsel] personally" if they "engage[d] in sanctionable conduct." (Id.)

On December 2, defendants filed their submission in the form of a letter from Mr. MacMull.  (ECF No. 248.)  In that submission, Mr. MacMull proposed a Rule 30(b)(6) deposition covering the exact same 31 topics from the initial notice and adding one more topic.  (ECF No. 248-1.)  Mr. MacMull did not provide a written justification following each and every subject, as the Court had specifically ordered.  Instead, he opted for a blunderbuss approach that lumped up to 11 topics together under a single rationale.  Defendants' submission also contained a Rule 30(b)(1) notice for Mr. Cesari.  (ECF No. 248-2.)

The Court will work with Mr. MacMull's noncompliant submission to fulfill its responsibility to assist the parties in completing discovery.

## DISCUSSION

### I.   Questions About Ownership and Use of the Mark (Topics 1-8, 11, 29-30)

Based on Mr. MacMull's letter, it appears that the justification defendants offer for 11 topics rest on two faulty premises, the fallacies of which inform the Court's decisions on the appropriateness of those topics.

First, Mr. MacMull's letter proceeds as if there is a genuine issue about plaintiff's ownership and validity of the mark.  There is no such issue.  As discussed above, the TTAB

previously held in its summary judgment ruling that "[t]here is no genuine issue of fact [that] . . . the registration [of the LIANO mark] is subsisting and is owned by [Cesari]," a conclusion that necessarily involved a finding that the mark was used by Cesari in commerce.  <u>Cesari S.R.L. v. Peju Province</u>, Opp. No. 91158374, 2004 WL 1703103, at *2 (T.T.A.B. July 20, 2004).  Thus, regardless of the preclusive effect of the TTAB's judgment as to specific defendants, that Cesari owns a valid registered trademark in LIANO is an established fact, which the Court observes has never previously been challenged in this litigation.

Mr. MacMull's letter, however, contends that plaintiff's use of the mark as it relates to the ownership and validity of the mark is a live dispute.  Notably, defendants have not raised abandonment as an affirmative defense in their answer to plaintiff's amended complaint.  Nor, for that matter, have defendants meaningfully raised the subject of plaintiff's use of the mark in outlining the outstanding issues in this litigation and the topics remaining for discovery, instead identifying equitable defenses such as laches as grounds to contest plaintiff's ability to enforce it trademark rights. It is obvious that if plaintiff's non-use of the trademark were truly a defense in this nearly four-year-old case, it would have been raised and pursued years ago.

Nevertheless, the Court has no objection to the witness answering questions typically asked at the outset of any deposition concerning his relationship with plaintiff and his role and duties.  Defendants may also explore, at a basic level, background information to establish whether plaintiff used the mark in the United States, including general information about sales, revenues, and profits associated with that use and whether plaintiff advertised the mark. Given that this topic has not been brought to the Court's attention until just before the end of discovery, proportionality dictates that defendants have not justified delving into more granular inquiries, such as specific details on hiring advertising agencies, using social media, the amount spent on advertising in any given period, and other topics of that nature.  Defendants' examination of these topics is instead limited to a basic level of generality to establish that plaintiff did, in fact, use the mark in the United States.   Anything further is burdensome and impermissible.

Second, Mr. MacMull's letter references expectations that trademark holders have about consumer confidence in the quality of their products associated with the mark.  While trademark law is no doubt intended to protect these interests of both consumers and trademark holders, those are issues to

be raised by the owner of the infringed trademark, not the allegedly infringing party.  Accordingly, questions regarding the quality of plaintiff's products and consumer complaints are not relevant and may not be asked at the deposition.

## II.  Questions About the Pleadings (Topics 9-10, 12-15, 20-25)

The next tranche of proposed topics concerns the pleadings.  While the pleadings broadly set the parameters of discovery and relevance in any case, proposing topics such as "[t]he allegations in the First Amended Complaint," and "[t]he affirmative defenses set forth in the Answers" are simply too vague to comply with Rule 30(b)(6)'s requirement that the subject matter for examination be "described with reasonable particularity."

However, based on Mr. MacMull's statements during the April 30 status conference of the subject matter that he wished to explore at the upcoming deposition, the Court would expect questions related to the factual bases of the affirmative defenses of laches, waiver, estoppel, and acquiescence raised in defendants' answer.  (See ECF No. 210 at 22-24, 28.)

Likewise, as they relate to defendants' affirmative defenses discussed above, questions about plaintiff's knowledge of defendants and their use of the LIANA mark,

internal communications regarding defendants, communications with defendants, policies regarding plaintiff's enforcement of its trademark rights, and general factual background questions about the prior TTAB proceeding involving the parties are appropriate.   Questions about other lawsuits involving plaintiff are irrelevant and beyond the scope of the defenses raised.

Despite the obvious overbreadth of the proposed topics discussed above, the Court will give defendants some leeway to ask factual questions regarding the pleadings, though care must be taken to limit the questions of the witness to matters of fact, not law, and be consistent with the other parameters set out in this Order.

## III. Questions About Plaintiff's Discovery Responses (Topics 16–19, 26–28)

Defendants propose to explore several topics related to plaintiff's discovery responses.   Defendants may not ask questions about legal conclusions or a lawyer's work product in preparing those responses.   Additionally, questions about amending privilege logs and discovery responses are not properly directed to this witness.   If defendants have specific factual questions about the substantive content of discovery responses, they may ask the witness to address those topics as long as it does not violate the scope of permissible

topics for the deposition as set out in this Order.
Defendants may also ask questions about plaintiff's document
custodians, document retention policies, preservation
protocols, and the steps plaintiff took to respond to
defendants' discovery responses, which are typical topics for
depositions.

### IV.   Questions About Legal Advice Plaintiff Received (Topics 31-32)

The final two topics defendants propose are: (1) "The
form of any opinions received from Plaintiff's counsel,
concerning the Mark, LIANA, this Lawsuit, or any of the
Defendants or their wineries"; and (2) "The reliance, or not,
on advice received from Plaintiff's counsel, concerning the
Mark, LIANA, this Lawsuit, or any of the Defendants or their
wineries." Not much more needs to be said about these topics
besides the obvious: even a cursory review of the proposed
subject areas reveals that they will almost exclusively
concern matters protected by the attorney-client privilege.
The Court is unaware of any basis to conclude that the usual
rules of privilege have been waived in this case. And, in
any event, defendants failed to offer any explanation as to
why they would be entitled to explore presumptively
privileged material. These subjects are, accordingly, not
permitted.

## V.    Summary of Rulings

The table below summarizes the Court's rulings for each topic in defendants' proposed Rule 30(b)(6) notice (ECF No. 248-1):

| (1) Limited only to basic background questions about plaintiff and the witness's relationship with plaintiff. | (2) Limited to general background questions to establish the context of plaintiff's ownership and use of the mark in the United States. | (3) Same as 2. | (4) Same as 2. |
|---|---|---|---|
| (5) Same as 2. | (6) Not permitted. | (7) Same as 2. | (8) Not permitted. |
| (9) Same as 2. | (10) Limited, as discussed above. | (11) Same as 2. | (12) Permitted. |
| (13) Permitted, as it pertains to LIANO in the United States. | (14) Not permitted. | (15) Limited, as discussed above. | (16) Limited, as discussed above. |
| (17) Limited, as discussed above. | (18) Limited, as discussed above. | (19) Limited, as discussed above. | (20) Permitted. |
| (21) Permitted. | (22) Permitted. | (23) Permitted. | (24) Permitted. |
| (25) Permitted. | (26) Permitted. | (27) Permitted. | (28) Permitted. |
| (29) Not permitted. | (30) Not permitted. | (31) Not permitted. | (32) Not permitted. |

None of the rulings are to be construed as waiving any applicable objection or discovery privilege that plaintiff might assert.  Moreover, while the Court has permitted some leeway in the questioning even when it was not entirely clear how the topic related to an open issue, this accommodation

should not be understood as a ruling that the topic would constitute admissible evidence at summary judgment or at trial.[2]

**SO ORDERED.**

Dated:      New York, New York
            December 10, 2020

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[2]      Mr. MacMull is advised that the Court came within a hair's breadth of issuing a sanctions order for his flagrant disregard of the Court's Order of November 23 and for the failure to withdraw or narrow his Rule 30(b)(6) deposition notice despite his total inability to justify two-thirds of the 32 proposed topics.  Praemonitus Praemunitus (Latin proverb, "Forewarned is Forearmed").