UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
CESARI S.R.L.,

          Plaintiff,

      - against –

PEJU PROVINCE WINERY L.P., PEJU
FAMILY OPERATING PARTNERSHIP
L.P., and PEJU PROVINCE
CORPORATION,

         Defendants.
------------------------------X

**MEMORANDUM AND ORDER**

17 Civ. 873 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    For the past five and a half years, the Italian winemaker Cesari S.r.L. ("Cesari" or "plaintiff") has been embroiled in a trademark litigation against Napa Valley-based vintners Peju Province Winery L.P. ("Peju Province"), Peju Family Operating Partnership L.P. ("Peju Partnership"), and Peju Province Corporation[1] (collectively, "Peju" or "defendants"). This conflict dates back to January 2003, when Cesari obtained a United States federal trademark registration for its "LIANO" wine brand. By happenstance, around the same time, Peju Province began promoting a wine dubbed "LIANA." In February 2003, Peju Province submitted

---

[1] Peju Province Corporation is the general partner of Peju Province and Peju Partnership. See ECF No. 58 at 3. In a joint letter to the Court dated September 9, 2021, plaintiff sought leave to dismiss Peju Province Corporation from this action and included a proposed order. ECF No. 298 at 4. Defendants did not oppose the request. Id. The Court signed plaintiff's proposed order on October 5, 2021. ECF No. 299.

an application to the United States Patent and Trademark Office ("USPTO") to register the LIANA mark.  Upon learning of Peju Province's application, Cesari filed an opposition with the Trademark Trial and Appeal Board ("TTAB").  Cesari ultimately prevailed before the TTAB.  In a decision rendered in July 2004, the TTAB rejected Peju Province's trademark application on the grounds that the proposed LIANA mark was confusingly similar to Cesari's registered LIANO mark.  Unbeknownst to Cesari, Peju Province nevertheless continued to sell its LIANA-branded wine until 2007, after which the mark lay dormant until 2014.

In 2014, Peju Partnership sought to resurrect the LIANA brand. Allegedly unaware of its affiliate's prior attempt, Peju Partnership submitted an application to the USPTO to register the "LIANA" mark in March 2016.  In August 2016, Cesari discovered Peju Partnership's application and thereafter the parties attempted to reach a consensual resolution regarding Peju's use of the LIANA brand.  After negotiations failed, on January 30, 2017, Cesari once again commenced opposition proceedings before the TTAB.  One week later, Cesari brought this action, alleging federal and state trademark infringement and unfair competition claims

arising from Peju's use of the LIANA mark from 2014 through the filing of the complaint.[2]

After years of contentious litigation, defendants now move for summary judgment, seeking dismissal of all of plaintiff's claims as untimely under the applicable statute of limitations and the equitable doctrine of laches.[3]  In its opposition, plaintiff

---

[2] The First Amended Complaint sets forth two causes of action.  See First Am. Compl. ("FAC"), ECF No. 197.  The first cause of action asserts two claims: trademark infringement under Section 32 of the Lanham Act (15 U.S.C. § 1114(1)(A)), and false designation of origin (also known as "unfair competition") under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)). Id. ¶¶ 116-31.  The second cause of action asserts corresponding claims under New York state and common law.  Id. ¶¶ 187-93.  Neither party raised the issue of choice of law with respect to what state's substantive law controls and simply assumed New York law governs.  Since courts are "not required to conduct a choice of law analysis sua sponte, and instead may apply the state law assumed by the parties in their papers," the Court will apply New York substantive law where applicable.  Henneberry v. Sumitomo Corp. of Am., 415 F. Supp. 2d 423, 439 n.7 (S.D.N.Y. 2006) (citing Lehman v. Dow Jones & Co., 783 F.2d 285, 294 (2d Cir. 1986) (Friendly, J.)).

[3] Defendants also moved for summary judgment on the merits of plaintiff's federal unfair competition claim under 15 U.S.C. § 1125(a)(1)(A) and corresponding state law claims.  Defendants' argument centers on the Supreme Court's decision in Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014), which held that to assert a cause of action for false advertising under 15 U.S.C. § 1125(a)(1)(B) — a provision not at issue in this case — a plaintiff must establish that the defendant proximately caused an injury to a commercial interest in reputation or sales.  Defendants argue that this requirement also applies to unfair competition claims under Section 1125(a)(1)(A) and that plaintiff has failed to make the requisite showing.  Plaintiff disagrees. Section 1125(a)(1)(A) imposes liability for infringements of unregistered marks.  This case, however, involves a registered mark, the validity of which has never been called into question.  As such, plaintiff's infringement claims, as pled, arise under 15 U.S.C. § 1114(1)(A), the Lanham Act section that governs violations of registered trademarks.  At oral argument, the Court confirmed that defendants do not seek dismissal of plaintiff's Section 1114 claims on the merits and that a cause of action under Section 1114 was sufficient for plaintiff's purposes.  June 14, 2022 Hr'g Tr. at 2:16-24; 4:12-5:24. Accordingly, there is no need to engage in the debate about the scope of Lexmark, and we decline to do so.  Defendants' recent letter of July 8, 2022, which cites an out of Circuit case involving yet another section of the Lanham Act that is even further afield, does not change our analysis.

seeks dismissal of defendants' affirmative defenses, arguing that they fail as a matter of law.   Plaintiff also seeks summary judgment on an issue previously litigated in this case, which was reignited by defendants' motion — namely, whether Peju Partnership, an entity that was not party to the original TTAB proceedings, is collaterally estopped from relitigating the TTAB's 2004 ruling that the LIANA mark was confusingly similar to LIANO.[4] Oral argument on defendants' present motion was held on June 14, 2022.   For the reasons discussed below, defendants' motion for summary judgment is denied in its entirety and the statute of limitations and laches defenses are dismissed.   Plaintiff's request for summary judgment on the issue of collateral estoppel is granted.

## RULE 56.1 STATEMENTS

Three Rule 56.1 Statements of Material Facts were filed in connection with this motion: (1) defendants' Rule 56.1 Statement

---

[4] This Court previously held that defendant Peju Province Winery, the party to the 2003-2004 TTAB proceedings, was precluded from relitigating the issue of likelihood of confusion.   Cesari S.r.L. v. Peju Province Winery L.P., No. 17 Civ. 873 (NRB), 2017 WL 6509004, at *3-*5 (S.D.N.Y. Dec. 11, 2017) (granting in part and denying in part plaintiff's motion for partial summary judgment).   That ruling, however, did not extend to co-defendants Peju Partnership or Peju Province Corporation, neither of which were party to the prior TTAB dispute, as plaintiff had failed to establish, based on the record then before the Court, the requisite relationship between the entities for the purposes of issue preclusion.   Id.; see also Cesari S.r.L. v. Peju Province Winery L.P., No. 17 Civ. 873 (NRB), 2018 WL 5831315, at *2-*3 (S.D.N.Y. Nov. 7, 2018) (denying plaintiff's renewed motion for partial summary judgment).

("SOF"), ECF No. 330, (2) plaintiff's counter Rule 56.1 Statement
("Counter SOF"), ECF No. 351, and (3) defendants' reply Rule 56.1
Statement ("Reply SOF"), ECF No. 363.  Both parties' submissions
were problematic.  Many of defendants' statements were not material
or were not supported by the evidence cited, and many of
plaintiff's counter statements deny basic facts without
substantiation or are argumentative assertions.  The Court
disregarded all such improper statements.

Further, plaintiff's hearsay objections to the defendants'
supporting declarations and materials are without merit.
Declarations are admissible forms of evidence under Federal Rule
of Civil Procedure 56, and plaintiff has not shown that any
declarant lacks personal knowledge or is incompetent to testify
about the matters discussed therein.  See Fed. R. Civ. P.
56(c)(1)(A).  With respect to the advertisements cited by
defendants, the Court "has the discretion to consider
unauthenticated . . . evidence where it is apparent that the party
may be able to authenticate and establish the admissibility of
those documents at trial." Bhd. Mut. Ins. Co. v. Ludwigsen, No.
16 Civ. 6369 (CS), 2018 WL 4211319, at *5 n.6 (S.D.N.Y. Sept. 4,
2018) (citations omitted).  Defendants could easily authenticate
the promotional materials at trial.  Finally, defendants'

objection to the declaration of Stewart Gitler submitted in support of plaintiff's opposition is rejected for the reasons set forth in n.12 <u>infra</u>.

In light of the foregoing, where the Court relies on facts drawn from any of the 56.1 Statements, it has done so because the record evidence duly supports the statements, no rule of evidence bars admission, and the opposing party has not disputed the facts or has not done so with citations to admissible evidence.

<u>**FACTUAL BACKGROUND**</u>

**A.   The Parties and Their Marks**

Cesari S.r.L., an Italian wine producer that sells its wine globally, including in the United States, has sold wine under the brand name "LIANO" since 1989.  SOF ¶¶ 1, 5; Counter SOF ¶ 1.  In January 2003, Cesari obtained a federal trademark for "LIANO" for the sale of wine in International Class 33.  SOF ¶ 4.

Peju Province Winery L.P. is a family-owned and operated winery founded by Anthony and Herta Peju and located in Napa, California.  <u>Id.</u> ¶ 2.  In December 2012, Peju Family Operating Partnership L.P. was formed as part of a corporate restructuring "to convey ownership of the Peju winery business" to the Peju daughters, Ariana and Lisa.  Decl. of Ariana Peju in Opp. to Pl. Mot. for Partial Summary Judgment ¶ 2, ECF No. 32.  One of Peju's wine brands was "LIANA," a portmanteau of the daughters' names.

SOF ¶ 40.   In 2003 and then again in 2016, Peju attempted to register the LIANA mark with the USPTO.   Those attempts, and what transpired during the years in between, are discussed in detail below.

**B.   Defendants' First Attempt to Trademark "LIANA"**

In 2003, Peju Province began promoting a 2002 Late Harvest Chardonnay under the brand "LIANA."   SOF ¶ 20.   On February 4, 2003, Peju Province submitted an application (the "2003 Application"), signed by Anthony Peju, to the USPTO to register the mark "LIANA" on an intent-to-use basis for the sale of wine in International Class 33.   Id. ¶ 6.   On September 3, 2003, the USPTO filed a notice that the 2003 Application would be published for opposition on September 23, 2003.   Decl. of Joel G. MacMull in Support of Defs. Mot. for Summary Judgment ("MacMull Decl."), Ex. A., ECF No. 325.   Shortly thereafter, Cesari learned of Peju Province's Application through a trademark watch alert.   Decl. of Gianmaria Cesari ("Cesari Decl.") ¶ 5, ECF No. 348.

Believing the proposed LIANA mark would be damaging to its registered LIANO mark, Cesari Decl. ¶ 5, Cesari filed an opposition to the 2003 Application with the TTAB on October 20, 2003, SOF ¶ 8.   Peju Province subsequently served Cesari with its answer to the opposition.   SOF ¶ 9.   On February 7, 2004, Cesari moved for judgment on the pleadings on the grounds that the marks were

virtually identical and that Cesari, having registered its LIANO mark in January 2003, had uncontested first use of the registered mark in commerce.  MacMull Decl., Ex. F.  On March 2, 2004, Peju Province filed its opposition to Cesari's motion, arguing, <u>inter alia</u>, that the LIANA mark is used only in the United States and that there is no likelihood of confusion between the two marks. MacMull Decl., Ex. G.

On July 20, 2004, the TTAB granted summary judgment in favor of Cesari, finding that "[t]here is no genuine issue of fact as to [Cesari's] priority."  <u>Cesari S.r.L. v. Peju Province</u>, 2004 WL 1703103, at *2 (T.T.A.B. 2004).  The TTAB also concluded that there is a likelihood of confusion between the marks because the marks are "almost identical," "there is no genuine issue that the parties' goods are identical," and "neither [Cesari's] pleaded registration nor [Peju's] application has restrictions as to the channels of trade or purchasers."  <u>Id.</u>  Peju Province failed to appeal or otherwise challenge the TTAB's ruling and elected not to submit a revised application narrowing its target market. Thereafter, on September 28, 2004, the USPTO issued a "Notice of Abandonment" for the 2003 Application, stating that "[t]he trademark application . . . was abandoned on 07-20-2004 as a result

of the Trademark Trial and Appeal Board proceedings." MacMull
Decl., Ex. H.

Despite the TTAB's ruling and the deemed abandonment of the
2003 Application, the next year, Peju Province began commercial
sales of its LIANA-branded 2002 Late Harvest Chardonnay. SOF ¶ 22.
Peju produced approximately 350 cases of the wine, which almost
entirely sold out by 2007. Decl. of Kandiss Schulz in Support of
Defs. Mot. for Summary Judgment ("Schulz Decl."), Ex. A, ECF No.
328.

**C.  Defendants' Second Attempt to Trademark "LIANA"**

In the summer of 2014, Peju published a newsletter announcing
"the return of Liana" with a new 2013 vintage, "the first [Liana-
branded] vintage since 2002." Pl. Mot. for Partial Summary
Judgment, Ex. 4 at 70, ECF No. 24. The following year, Peju
Partnership acquired a new winery that began doing business as
Liana Estates. SOF ¶¶ 25-26. In January 2016, Ariana Peju asked
Peju's then-trademark counsel, Scott Gerien, to investigate the
availability of the "LIANA" trademark. Id. ¶ 27. Ms. Peju
maintains that at that time, she was unaware of Peju Province's
2003 Application and the prior dispute with Cesari before the TTAB.
Decl. of Ariana Peju in Support of Defs. Mot. for Summary Judgment
("Ariana Peju Decl.") ¶ 20, ECF No. 326.

After completing an initial trademark search, Mr. Gerien informed Ms. Peju that the LIANA mark was unregistered and opined that although there were several other marks encompassing the word "LIANA," there were sufficient differences to overcome opposition. Ariana Peju Decl., Ex. A at 2.  The next month, Ms. Peju again asked Mr. Gerien to investigate the LIANA mark among several other potential marks.  Ariana Peju Decl., Ex. B at 1.  The list of results from Mr. Gerien's subsequent trademark search included Cesari's LIANO mark.  Decl. of Valeria Calafiore Healy dated January 24, 2022 in Support of Cesari's Opp. to the Peju Defs. Mot. for Summary Judgment ("Healy Decl."), Ex. 10, ECF No. 349. However, according to Ms. Peju, Mr. Gerien did not explicitly identify Cesari's LIANO mark as a potential obstacle to registration.  Ariana Peju Decl. ¶ 10.  Rather, Mr. Gerien reiterated his position that Peju likely could overcome opposition, noting only that there was "some higher than normal risk" with the mark.  Ariana Peju Decl., Ex. B.

On March 11, 2016, Peju Partnership submitted an application (the "2016 Application"), again signed by Anthony Peju, to register the mark "LIANA" on an intent-to-use basis for the sale of wines and spirits in International Class 33, the same class cited in the 2003 Application.  SOF ¶ 29; see MacMull Decl., Ex. L.  The USPTO

published the 2016 Application for opposition on August 2, 2016.
SOF ¶ 30.  As in 2003, soon after publication, Cesari received a
trademark watch alert for the 2016 Application, Counter SOF ¶ 31,
and promptly acted on the information.  On August 31, 2016, Cesari
filed a request for an extension of time to oppose the 2016
Application, which was granted.  SOF ¶ 32.  Cesari then sent Peju
a cease-and-desist letter, demanding that Peju terminate its use
of the LIANA mark and withdraw the 2016 Application.  Ariana Peju
Decl., Ex. F.  Between November 2016 and January 2017, Cesari and
Peju engaged in negotiations in an attempt to consensually resolve
Cesari's objections to Peju's use of the LIANA mark.  SOF ¶ 34.
In the midst of these negotiations, the fact of the 2003 TTAB
proceedings came to light, <u>see</u> Ariana Peju Decl., Ex. I, and
communications eventually broke down, SOF ¶ 35.

On January 30, 2017, Cesari filed an opposition to the 2016
Application, citing its first-in-time priority and the TTAB's
prior ruling against Peju's 2003 Application.  SOF ¶ 36.  Cesari
then commenced this action on February 6, 2017.[5]  <u>Id.</u> ¶ 37.  Peju
nevertheless continued the production and sale of its LIANA-

_____

[5] The next day, Cesari moved to suspend the TTAB proceedings pending the
disposition of this action.  <u>See</u> <u>Cesari S.r.L. v. Peju Family Operating</u>
<u>Partnership L.P.</u>, Opp. No. 91232542 (T.T.A.B. 2017) at Doc. No. 4.  The TTAB
granted Cesari's motion on March 14, 2017.  <u>Id.</u> at Doc. No. 5.

branded wines through July 2018,[6] when in response to plaintiff's pending preliminary injunction motion defendants ceased using the LIANA mark and rebranded their winery.  July 16, 2018 Letter, ECF No. 82.  On March 6, 2019, Peju filed a notice with the TTAB "expressly abandon[ing]" the 2016 Application with prejudice. Healy Decl., Ex. 12.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the initial burden rests with the moving party to make a prima facie showing that no material fact issues exist for trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once that showing is made, "[t]o defeat summary judgment, the non-movant must produce specific facts" to rebut the movant's showing.  Wright v. Coughlin, 132 F.3d 133, 137 (2d Cir. 1998) (citing Celotex, 477 U.S. at 322). In ruling on a summary judgment motion, a court "must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary

---

[6] As the resolution of this motion does not turn on the amount of sales, cost of goods sold, or net profit, we will not attempt to specify any such numbers or amounts.

judgment." <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citation omitted).

**DISCUSSION**

Defendants seek summary judgment dismissing all of plaintiff's claims on the grounds that they are time-barred under the applicable statute of limitations and by laches.  Mem. of Law of Peju Province Winery L.P. and Peju Family Operating Partnership L.P. in Support of Their Mot. for Summary Judgment ("Def. Br.") at 3, 21, ECF No. 331.  Plaintiff counters that defendants' statute of limitations and laches defenses fail as a matter of law.  Pl. Cesari S.r.L.'s Opp. to the Peju Defs. Mot. for Summary Judgment ("Pl. Opp. Br.") at 1, ECF No. 350.  In addition, plaintiff seeks summary judgment on the issue of whether this Court's prior collateral estoppel ruling against Peju Province should extend to Peju Partnership.  <u>Id.</u>  The Court first addresses plaintiff's collateral estoppel argument.  The Court then turns to defendants' statute of limitations and laches defenses.

**A.   Collateral Estoppel**

In light of the TTAB's 2004 ruling rejecting Peju Province's trademark application, one of the earliest issues litigated in this suit was whether defendants were precluded from relitigating the issue of likelihood of confusion.  This issue is pivotal to plaintiff's case.  To prevail on an infringement claim under

-13-

Section 1114(1)(A) of the Lanham Act, "a plaintiff must show, first, that its mark merits protection, and, second, that the defendant's use of a similar mark is likely to cause consumer confusion." Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC, 823 F.3d 153, 160 (2d Cir. 2016).  It is undisputed that plaintiff's registered LIANO trademark is valid. SOF ¶ 4.[7]  Thus, plaintiff's infringement claims turn on whether there is a likelihood of confusion between the parties' marks.

In a Memorandum and Order dated December 11, 2017 addressing plaintiff's first motion for partial summary judgment, this Court held that Peju Province Winery, the party to the 2003 TTAB proceedings, was precluded from relitigating the TTAB's determination that the LIANA mark was confusingly similar to LIANO. Cesari S.r.L. v. Peju Province Winery L.P., No. 17 Civ. 873 (NRB), 2017 WL 6509004, at *3-*5 (S.D.N.Y. Dec. 11, 2017) (the "2017 Order").  In reaching that conclusion, the Court relied on the Supreme Court's decision in B&B Hardware, Inc. v. Hargis Indus., Inc., 575 U.S. 138, 160 (2015), which held that "[s]o long as the other ordinary elements of issue preclusion are met, when the

---

[7] Moreover, "[a] certificate of registration with the [Patent and Trademark Office] is prima facie evidence that the mark is registered and valid." Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999).  Plaintiff has produced a copy of its USPTO certificate. See Compl., Ex. 1, ECF No. 1.

usages adjudicated by the TTAB are materially the same as those before the district court, issue preclusion should apply." Id. at *3. Rejecting defendants' attempt to identify divergences in use, this Court concluded that each party uses its "mark in ways that are materially the same as the usages adjudicated by the TTAB." Id. at *3-*4. Specifically, "Cesari registered its trademark, LIANO, with respect to 'wines' in International Class 33" and "Cesari has continued to use its LIANO mark on wines." Id. at *3. Likewise, "Peju Province applied to register its mark, LIANA, with respect to 'wine' in International Class 33," and "Peju Province has used its LIANA mark on the 2002, 2013, 2014, and 2015 LIANA vintages and the 2014 Liana Estates vintage." Id. Further, "[t]he specific trade channels and classes of consumers that purportedly characterize the LIANA mark's usage are among the reasonable trade channels and usual classes of consumers the TTAB considered." Id. at *4 (internal quotation marks and citations omitted). As such, upon concluding the ordinary elements of issue preclusion were satisfied with respect to Peju Province, this Court held that Peju Province was precluded from relitigating the issue of likelihood of confusion. Id. at *3-*5.

However, the Court declined to extend its ruling to Peju Partnership and Peju Corporation, neither of which participated in

-15-

the original TTAB dispute, because the record before the Court at that time did not establish a sufficient connection between the various Peju entities for the purposes of collateral estoppel. Id. at *5.  As the Court observed, "the strongest connection between any of these entities is disputed; Cesari contends that Anthony and Herta Peju are the general partners of Peju Province, whereas defendants assert that Peju Corporation is the sole general partner."  Id.  Moreover, Peju Partnership was not formed until 2012. Id. at *2.  The Court explained that to extend the preclusive effect of the TTAB judgment to the co-defendants, "Cesari must show either that (a) Peju Corporation and/or Peju Partnership controlled Peju Province in the TTAB litigation, or (b) Peju Province is controlling Peju Corporation and/or Peju Partnership in the instant litigation."  Id. at *5.

Cesari again raised the issue of collateral estoppel in a renewed motion for partial summary judgment filed on May 4, 2018. See ECF No. 51.  Concluding plaintiff's additional allegations still did not suffice to link the Peju entities for the purposes of issue preclusion,[8] this Court denied plaintiff's renewed motion.

---

[8] In a sparse Rule 56.1 Statement filed alongside its motion, plaintiff asserted that Peju Corporation is the general partner of both Peju Province and Peju Partnership, that Anthony and Herta Peju are the directors of Peju Corporation, and that Anthony and Herta Peju own and manage Peju Partnership.  See ECF No. 51-2.

Cesari S.r.L. v. Peju Province Winery L.P., No. 17 Civ. 873 (NRB), 2018 WL 5831315, at *2-*3 (S.D.N.Y. Nov. 7, 2018).  Not only in their oppositions to plaintiff's summary judgment motions but also throughout the years that followed, defendants consistently maintained that Peju Province and Peju Partnership were distinct entities and that plaintiff failed to establish the requisite control needed to extend this Court's collateral estoppel ruling.[9]

Now, after more than five years of litigation, defendants have reversed position.  In their moving brief on the present motion, defendants concede for the purposes of this litigation that Peju Province and Peju Partnership "are effectively one and the same entity because, inter alia, they share common ownership and control."  Def. Br. at 11 n.5.  In her declaration submitted in support of defendants' motion, Ariana Peju states that Peju Province and Peju Partnership "exercise joint control over their respective Liana-branded products" and "share common ownership and

---

[9] During the six-and-a-half-hour discovery conference held on June 9, 2021, counsel for defendants stated for the first time that defendants might be willing to stipulate to the issue of "the interrelationship and the control of the three [defendants]."  June 9, 2021 Hr'g Tr. at 27:2-7, ECF No. 289.  However, as reported to the Court in a joint status update letter filed on September 9, 2021, Peju clarified that any such stipulation could not be used for the purposes sought by Cesari in this case, namely, "to hold the remaining defendant Peju [Partnership] liable under the collateral estoppel and related theories Cesari has plead [sic] in its complaint, as amended."  ECF No. 298 at 4.  Such a caveat would make defendants' proposed stipulation meaningless.  Given this bait-and-switch, it would not be too cynical to conclude that the raising of the proposed stipulation during oral argument was a diversionary tactic to dissuade the Court from addressing the issue during the conference.

control." Ariana Peju Decl. ¶¶ 7, 8.  Ms. Peju explains that she and her sister Lisa "are trustees and beneficiaries of a trust that is the majority shareholder in both" Peju Province and Peju Partnership.  Id. ¶ 8.  She also states that "[t]o this day, certain business decisions, including those sometimes involving branding and marketing of both [Peju Province] and [Peju Partnership] wines are often made with one or more family members sharing information and collaborating." Id.  Ms. Peju identifies herself, her father, her mother, and her sister as the "decision makers at both" Peju Province and Peju Partnership.  Id. ¶ 9.

Defendants make no effort to hide the impetus behind this about-face.  In their motion, defendants invoke statute of limitations and laches defenses on behalf of both Peju Province and Peju Partnership.  However, since Peju Partnership did not exist prior to December 2012 and did not use the LIANA brand until 2014, that defendant could not assert timeliness defenses unless it could claim Peju Province's longevity as its own.  Thus, defendants now concede a single enterprise-type connection between the two Peju entities in order to argue that "a finding of terminal delay by this Court as to [Peju Province] also applies with equal force to [Peju Partnership]." Def. Br. at 11 n.5.

In its opposition brief, plaintiff contends that defendants'
concession and invocation of their affirmative defenses on behalf
of both Peju entities "is sufficient as a matter of law to
establish the requisite control" needed "to extend [the Court's]
collateral estoppel ruling to Peju Partnership."  Pl. Opp. Br. at
12.  The Court agrees.  Defendants' concession, illuminated by the
color Ms. Peju provides in her supporting declaration, confirms
that there is a sufficient identity between Peju Province and Peju
Partnership such that the latter may be bound by judicial
determinations made against the former.

At oral argument, defense counsel unsuccessfully attempted to
backtrack, stating:

> I acknowledge now it may be poor language in footnote -
> - what was it footnote 5? . . . But I do want to maintain
> that what we are talking about in terms of the
> commonality is specifically referenced in the
> declaration so that has its limitations, and that's my
> fault. I understand that there is maybe some loose
> language in there.

June 14, 2022 Hr'g Tr. at 24:19-25:2, ECF No. 369.  There is
nothing inartful about defendants' admission, however, and Ms.
Peju's declaration does not articulate any limits to the connection
between the two co-defendants, other than to say that they are not
literally the same entities.  Ariana Peju Decl. ¶ 6.

Defendants also tried to argue that footnote 5
notwithstanding, plaintiff has not proven that Peju Province is

-19-

controlling Peju Partnership in this suit, per this Court's 2017
Order.  June 14, 2019 Hr'g Tr. at 9:24-11:7; see Cesari, 2017 WL
6509004 at *5.  Defendants' reliance on that language is misplaced.
The explanation of the required showing for issue preclusion set
forth in the 2017 Order was made in the context of what the Court
knew at the time, which was precious little about the overlap in
operations and decision-making authority between the two entities.
However, demonstrating control in the instant litigation is but
one way of establishing privity such that a non-party may be bound
by a judgment rendered in another proceeding.

As the Second Circuit explained in Expert Elec., Inc. v.
Levine, whether there is an identity between parties for the
purposes of collateral estoppel "is a factual determination of
substance, not mere form.  Generally speaking, one whose interests
were adequately represented by another vested with the authority
of representation is bound by the judgment, although not formally
a party to the litigation."  554 F.2d 1227, 1233 (2d Cir. 1977)
(citations omitted), cert. denied, 434 U.S. 903 (1977); see also
Alpert's Newspaper Delivery Inc. v. The New York Times Co., 876
F.2d 266, 270 (2d Cir. 1989) (rejecting argument that "literal
privity must exist among the parties for them to be termed
identical" for collateral estoppel purposes).  Thus, collateral

estoppel may be appropriate where "the party bound is in substance the one whose interests were at stake in the prior litigation." Expert Elec., Inc., 554 F.2d at 1233.

The record evidence presently before the Court clearly establishes that Peju Province and Peju Partnership are "effectively one and the same," Def. Br. at 11 n.5, with the same interests at stake and the same authority of representation in both the 2003 TTAB proceedings and the present action.  In addition to the details supplied by Ms. Peju, the Court notes that Anthony Peju signed both the 2003 Application submitted by Peju Province and the 2016 Application submitted by Peju Partnership, and that the same website was used to promote the LIANA wines marketed by Peju Province between 2005 and 2007 and by Peju Partnership starting in 2014.  Further, notably absent from Ms. Peju's declaration is any disavowal of joint control over the present litigation.

At bottom, defendants cannot ask the Court to find such interconnectedness between the Peju entities for the purposes of their affirmative defenses, but not for issue preclusion. Accordingly, the collateral estoppel ruling set forth in the 2017 Order extends to defendant Peju Partnership such that Peju Partnership, like Peju Province, is precluded from relitigating

the TTAB's determination that Peju's LIANA mark is likely to cause confusion with Cesari's LIANO mark.[10]

## B.  Statute of Limitations

Turning to the heart of defendants' motion, defendants seek dismissal of all of plaintiff's claims as time-barred under the applicable statute of limitations.  "Because the statute of limitations is an affirmative defense, the defendant bears the burden of establishing by prima facie proof that the limitations period has expired since the plaintiff's claims accrued." Szymanski v. Local 3, Int'l Bhd. of Elec. Workers, 577 F. App'x 52, 53 (2d Cir. 2014) (quoting Overall v. Estate of Klotz, 52 F.3d 398, 403 (2d Cir. 1995)).  The Lanham Act establishes no specific limitations period for trademark infringement or unfair competition claims.  See 15 U.S.C. §§ 1114(1)(A), 1125(a)(1)(A).

---

[10] On a motion for summary judgment, "a district court may grant summary judgment to any party – including a non-movant," First Fin. Ins. Co. v. Allstate Interior Demolition Corp., 193 F.3d 109, 115 (2d Cir. 1999), so long as the moving party had notice and an opportunity to respond, such that it is not prejudiced, Bridgeway Corp. v. Citibank, 201 F.3d 134, 139 (2d Cir. 2000); see Fed. R. Civ. P. 56(f)(1),(3).  Where "the [moving] party either cannot claim to have been surprised by the [granting of summary judgment to a non-movant] or if, notwithstanding its surprise, the party had no additional evidence to bring, it cannot plausibly argue that it was prejudiced by the lack of notice." Bridgeway, 201 F.3d at 140.  Further, "the likelihood of prejudice is greatly reduced, even when summary judgment is based upon issues raised by the nonmoving party, if the moving party speaks to those issues in the course of the district court proceedings." Id.  Here, given defendants' opportunistic change of heart at this late stage, they can hardly claim surprise at plaintiff's resurrection of this previously litigated issue.  Moreover, defendants do not contend that they have additional evidence to bring.  There is thus no prejudice to defendants in granting plaintiff's request for summary judgment.

Accordingly, Second Circuit "courts have looked to the most analogous state statute of limitations: [New York's] six-year statute of limitations for fraud claims." Charles Atlas, Ltd. v. DC Comics, Inc., 112 F. Supp. 2d 330, 334 (S.D.N.Y. 2000) (citing Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 192 (2d Cir. 1996)).[11]  In general, "a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation." Guilbert v. Gardner, 480 F.3d 140, 149 (2d Cir. 2007).  However, a plaintiff is not "obligated to sue until its right to protection has ripened such that plaintiff knew or should have known, not simply that defendant

---

[11]  Both sides have assumed that New York's statute of limitations controls. See FAC ¶¶ 30-34; Def. Br. at 11.  Although neither party raises the issue, New York's borrowing statute, N.Y. C.P.L.R. § 202, arguably may compel application of a different state law.  Under C.P.L.R. § 202, "when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period . . . of either: (1) New York; or (2) the state where the cause of action accrued." Thea v. Kleinhandler, 807 F.3d 492, 497 (2d Cir. 2015) (internal quotation marks and citation omitted).  Typically, "[t]he burden is on [d]efendants to show . . . that [p]laintiff's cause of action 'accrued' outside New York." Estate of Mantle v. Rothgeb, 537 F. Supp. 2d 533, 541 n.14 (S.D.N.Y. 2008).  Defendants have made no such showing.  In any event, the Court's present ruling would be the same even if applying the statute of limitations period of the other potentially applicable forum, California, the site from where the LIANA-branded wines were marketed, packaged, and sold.  California courts apply a three-year statute of limitations to Lanham Act claims, which begins to run upon a plaintiff's "actual or constructive knowledge of the wrong." Karl Storz Endoscopy America, Inc. v. Surgical Technologies, Inc., 285 F.3d 848, 857 (9th Cir. 2002).  As discussed herein, the earliest infringements for which plaintiff seeks recovery date back to August 17, 2014 — just under two and a half years prior to the commencement of this action — when Peju Partnership made its first sales of the 2013 vintage LIANA wine. See Healy Decl., Ex. 1 at 2.  For the reasons explained below, the Court concludes that plaintiff had neither actual nor constructive knowledge of defendants' infringing conduct prior to that date.

was using the potentially offending mark, but that plaintiff had a provable infringement claim against defendant." ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy, 314 F.3d 62, 70 (2d Cir. 2002).

Defendants argue that plaintiff's Lanham Act claims are barred under New York's six-year statute of limitations because plaintiff had notice that defendants were using the LIANA mark as early as 2003, when defendants began advertising their 2002 vintage LIANA-branded wine. Def. Br. at 11-13. This argument is meritless for two reasons. First, defendants have failed to show that plaintiff knew or reasonably should have known that defendants continued using the LIANA mark after their trademark application was rejected by the TTAB and deemed abandoned by the USPTO in 2004. Second, and relatedly, plaintiff's claims arise solely from infringing conduct starting in 2014, when defendants began marketing new vintages of wine branded with the LIANA label, and thus are not barred by the applicable statute of limitations.

1. Cesari Did Not Have Notice of Peju's Conduct After the Conclusion of the 2003 TTAB Proceedings

Defendants fail to show that Cesari had notice of Peju's infringing conduct because: (a) defendants offer no evidence establishing actual or constructive knowledge; (b) Cesari did not have a duty of inquiry to continue monitoring Peju's conduct after

-24-

Cesari prevailed before the TTAB; and (c) even if Cesari had such a duty (which it did not), reasonable diligence would not have revealed Peju's infringements.

(a)   <u>Actual or Constructive Knowledge</u>

Defendants' primary argument in support of their statute of limitations defense is that plaintiff knew or should have known that they were using the LIANA mark in a potentially infringing way as early as 2003.  In support, defendants identify six examples of advertisements, filings, and other documents that purportedly demonstrate Cesari's actual or constructive knowledge of Peju's continued use of the LIANA mark:

> (1) a July 15, 2003 advertisement for a LIANA-branded wine on its website www.peju.com;
>
> (2) the October 3, 2003 trademark watch alert that notified Cesari of Peju's filing of the 2003 Application;
>
> (3) the December 12, 2003 answer that Peju served to Cesari in response to Cesari's opposition to the 2003 Application;
>
> (4) a December 19, 2003 article published by USA Today featuring a LIANA-branded wine;
>
> (5) a March 2, 2004 letter from Peju's trademark counsel to Cesari's trademark counsel;[12] and

---

[12] Cesari's trademark counsel, Stewart Gitler, disclaims ever receiving this letter.  Decl. of Attorney Stewart L. Gitler ("Gitler Decl.") ¶¶ 9-10, ECF No. 347.  Defendants argue the Gitler Declaration is inadmissible because plaintiff did not disclose Mr. Gitler as a witness as required by Fed. R. Civ. P. 26. Reply SOF ¶ 12.  The Court disagrees.  The sole purpose of the Gitler Declaration is to refute the assertions defendants made for the first time in connection with the present motion in support of their statute of limitations and laches defenses.  Gitler Decl. ¶ 4.  Since the use of Mr. Gitler's testimony is "solely

> (6) a July 21, 2004 article published by the Sacramento
> Bee featuring a LIANA-branded wine.

Def. Br. at 12.  These examples are utterly insufficient.

First and foremost, as the below timeline makes plain, every single one of defendants' examples (the numbered and shaded boxes) predates the USPTO's notice of abandonment of the 2003 Application, and all but one was published before the issuance of the TTAB's ruling rejecting the 2003 Application.



None of these examples reveal Peju's intention to continue using the LIANA brand regardless of how the TTAB ruled on their trademark application.  At most, they show Peju was using the mark at the time the 2003 Application was pending.  Such a showing is

---

for impeachment," plaintiff was not obligated to identify Mr. Gitler as a witness under Rule 26.  Fed. R. Civ. P. 26(a)(1)(A)(i).

hardly sufficient to establish actual knowledge or to place Cesari on constructive notice that Peju would continue using the LIANA mark despite its defeat before the TTAB.

(b)  Duty of Inquiry

Furthermore, while defendants are correct that as a general matter a trademark owner has a duty to actively police its mark against infringers, see Black Diamond Sportswear, Inc. v. Black Diamond Equipment, Ltd., No. 06-3508, 2007 WL 2914452, at *3 (2d Cir. Oct. 5, 2007), there are limits to that guiding principle. Importantly, "[a]bsent actual knowledge," a trademark owner is chargeable only "with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc., 988 F.2d 1157, 1162 (Fed. Cir. 1993) (quoting Johnston v. Standard Mining Co., 148 U.S. 360, 370 (1893)).  As such, to "constitute a legal imputation of knowledge," as defendants urge, Def. Br. at 13, infringing conduct must be sufficiently public and widespread such that the trademark owner reasonably should have been on alert.  Compare Black Diamond, 2007 WL 2914452 at *3 (concluding plaintiff had duty of inquiry and failed to undertake reasonable due diligence where defendant "marketed its products in

widely distributed catalogues, at yearly trade shows in which
[plaintiff and defendant] both participated, and through retail
stores nationwide, including in [plaintiff's] home state of
Vermont."); with Borghese Trademarks, Inc. v. Borghese, No. 10
Civ. 5552 (JPO), 2013 WL 143807, at *9 (S.D.N.Y. Jan. 14, 2013)
(refusing to conclude that plaintiff knew or should of known of
infringements, noting "[i]t is one thing to expect a company to
monitor for infringements; it is quite another to expect it to
spot several isolated minutes of infomercial footage over several
years.").

The facts known to Cesari in the wake of the 2003 TTAB
proceedings did not create a duty of inquiry obligating Cesari to
continue monitoring Peju's conduct.  At that time, Cesari knew
that Peju had applied to register the LIANA mark for the sale of
wine, that the TTAB had rejected Peju's application on the grounds
that the LIANA mark was confusingly similar to Cesari's registered
LIANO trademark, that Peju had not appealed or otherwise challenged
the TTAB's ruling, and that the USPTO had subsequently deemed
Peju's application abandoned.  Given these circumstances, it was
entirely reasonable for Cesari to assume that Peju would cease
using the LIANA mark.

In rebuttal, defendants spill much ink arguing that the TTAB's ruling did not legally enjoin them from using the LIANA mark in commerce, the implication being that Peju was free to use the brand as it wished and that Cesari should not have assumed otherwise. Def. Br. at 7-10 (citing Beasley v. Howard, 14 F.4th 226 (3d Cir. 2021)).[13]  Not so.  "While a successful [TTAB] opposition only acts to prevent registration and not use, as a practical matter, it puts the defendant on notice that, at the least, the plaintiff is not going to sleep on its rights, and indeed . . . goes even further and puts the defendant on notice that the opposer also protests its use of the confusingly similar mark." Citibank, N.A. v. Citytrust, 644 F. Supp. 1011, 1014 (E.D.N.Y. 1986) (quoting Alfred Dunhill of London, Inc. v. Kasser Distillers Prods. Corp., 350 F. Supp. 1341, 1367 (E.D. Pa. 1972), aff'd 480 F.2d 917 (3d Cir. 1973)).  Here, the TTAB proceedings put Peju on notice that the LIANA mark was deemed to be confusingly similar with that of a first-in-time registrant, that the registrant actively opposed Peju's use of the mark, and that Peju was not permitted to

---

[13] Beasley has no bearing on this case.  There, after the TTAB dismissed the plaintiff's petitions to cancel the defendant's registered trademark, the plaintiff brought a civil suit for trademark infringement.  14 F.4th at 229. This gave rise to the question of whether res judicata precluded the plaintiff from litigating his infringement claim in federal court.  Id.  In concluding that claim preclusion did not apply, the Court explained that questions of infringement or unfair competition exceed the scope of the TTAB's jurisdiction, so the TTAB could never have granted the plaintiff the relief he sought in federal court.  Id. at 233-34.

trademark the name.   Thus, when Peju continued to use the LIANA
mark in blatant disregard for the TTAB's ruling, it did so at its
own risk.   In arguing otherwise, defendants take the untenable
position that although Cesari defeated Peju's trademark
application, the burden was on Cesari to continue monitoring Peju's
conduct, seemingly indefinitely, lest Cesari be deemed to "sleep
on its rights."   Def. Br. at 14.   The Court cannot and will not
endorse such an inequitable allocation of burdens or reward such
defiance of authority.

> (c)   <u>Reasonable Diligence</u>

Even if Cesari had a duty of inquiry, which it did not,
reasonable diligence would not have revealed Peju's use of the
LIANA mark because there was nothing to discover.   From the
conclusion of the TTAB proceedings in 2004 until 2014, Peju's use
of the LIANA mark was minimal to nonexistent.   Peju's records show
that it produced roughly 350 cases of its 2002 LIANA-branded wine,
which it began selling commercially in 2005 and which almost
entirely sold out by 2007.   <u>See</u> Schulz Decl., Ex. A.   Such sales
were so minimal that it appears not even Anthony Peju knew about
them at the time.   <u>See</u> Decl. of Anthony Peju in Support of Defs.
Mot. for Summary Judgment ¶ 11, ECF No. 327 ("I have come to learn
in recent days that PPW's first LIANA-branded wine, a 2002 Late

Harvest Chardonnay, was available for sale on www.peju.com beginning in 2005."). Moreover, it is undisputed that Peju did not sell any LIANA-branded wine from 2008 until August 2014. See Healy Decl., Exs. 1-4. In the summer of 2014, Peju published a newsletter announcing "the return of Liana" and proclaiming that the "2013 vintage will be the first vintage since 2002." ECF No. 24-4. In fact, the Liana Estates winery was not formally launched until 2016. SOF ¶ 25.

In this regard, Peju's conduct bears no resemblance to the facts in Charles Atlas, Ltd. v. DC Comics, Inc., 112 F. Supp. 2d 330 (S.D.N.Y. 2000), the primary case upon which defendants rely. In Charles Atlas, the plaintiff, a bodybuilding instructor who used a comic strip story in his advertisements, alleged that the defendant misappropriated his story in one of defendant's comic books. 112 F. Supp. at 331-32. The comic book at issue was first published by the defendant in 1991 and the disputed portrayals reappeared in several miniseries that came out in the following years. Id. at 332-33. Plaintiff did not learn of the alleged infringement until 1998 and so did not bring suit until 1999. Id. at 332. In concluding that the "[p]laintiff could have, with reasonable diligence, discovered the alleged infringement upon [the book's] publication or shortly thereafter," the Court

observed that "[t]he allegedly infringing material was a nationwide mass-market publication by DC Comics, the industry leader," and plaintiff "was a large advertiser in DC comic books, even at the time that the infringing work appeared." Id. at 331-33 (internal quotation marks and citation omitted).

By contrast, here, Peju was not even selling, let alone publicly promoting and advertising, any LIANA-branded wine for the vast majority of time that Cesari was supposedly sleeping on its rights. The handful of advertisements to which defendants cite are far cries from the sort of widespread, industry marketing campaigns at issue in cases such as Charles Atlas and Black Diamond. Defendants identify two articles that referenced the LIANA wine, both of which were printed in American publications that do not focus on wine. One is a USA Today article dated December 19, 2003, which mentions the LIANA wine in a single sentence (ironically, about "niche and obscure wines"). MacMull Decl., Ex. J. The other is an article from the Sacramento Bee, a regional newspaper circulated in the Northern Sacramento Valley, which merely lists the LIANA wine among the winners of a Long Beach, California wine competition. Id. The Sacramento Bee article is dated July 21, 2004, which is just one day after the TTAB issued its ruling rejecting the 2003 Application.

Additionally, defendants point to a single advertisement of the LIANA-branded wine on Peju's website, which predates the TTAB's ruling by a year.   Defendants do not indicate how long the advertisement ran or how many people saw it.   As such, even if Cesari had investigated Peju's conduct earlier, it would not have discovered anything actionable.[14]

In sum, the record demonstrates that plaintiff did not know, had no obligation to investigate, and with reasonable diligence would not have known, that it had a ripe trademark infringement claim until August 2014 at the earliest, a date well within the applicable statutory window.   Accordingly, defendants' statute of limitations defense fails as a matter of law.

2. Plaintiff's Claims Arise from Conduct That Began in 2014

Defendants' statute of limitations defense fails for the additional reason that the claims asserted in plaintiff's First Amended Complaint arise entirely within the statutory period. Plaintiff commenced this suit on February 6, 2017.   Even if defendants could show that plaintiff had actual or constructive knowledge of defendants' infringing conduct dating back to the 2003 TTAB proceedings – which, as explained above, they cannot –

---

[14] Plaintiff maintains that it never saw any of these advertisements, see Cesari Decl. ¶ 9, and there is no basis in the record to question Cesari's denial of knowledge.   Rather, the record is that Cesari promptly sprang into action each time it learned of Peju's efforts to trademark the LIANA brand.

the statute of limitations defense would only "operate to bar monetary recovery for conduct which a fact-finder determines to be beyond the six-year period prior to the time of filing" the complaint; "it does not bar recovery within the statutory period." Broecker v. Widows Sons Grand Chapter the King's Guard Inc., No. 21 Civ. 6309 (CJS), 2021 WL 5309716, at *6 (W.D.N.Y. Nov. 15, 2021).[15] So at most, plaintiff would be barred from seeking damages for infringements that occurred prior to February 6, 2011.[16]

It is undisputed that defendants' first sale of wine with the resurrected LIANA brand occurred in August 2014. See Healy Decl., Ex. 1 at 2. Moreover, the Liana Estates winery did not commence operations until the fall of 2016. SOF ¶ 25. In total, "[Peju Partnership] sold, offered for sale, distributed and advertised wines using LIANA for 22 months from the fall of 2016 until July 2018." Id. ¶ 52. Accordingly, plaintiff seeks disgorgement of profits calculated based on "the total infringing sales [plaintiff] has been able to estimate were actually made by the

---

[15] To the extent defendants take the position that plaintiff's alleged failure to timely sue for claims from 2003 to 2005 prevents it from suing for any subsequent, albeit related, acts of infringement, they are wrong as a matter of law. See Gucci America, Inc. v. Guess?, Inc., 868 F. Supp. 2d 207, 246 (S.D.N.Y. 2012) ("[T]he statute of limitations defense only applies to bar monetary recovery beyond the statutory period.").

[16] Or, as discussed supra at n.11, February 6, 2014, if California law controls.

Peju defendants from 2014 to the present date." FAC ¶ 181. Plaintiff does not claim damages before that time.

The single case defendants offer in rebuttal is a Fourth Circuit decision that directly undermines defendants' argument. In Lyons P'ship, L.P. v. Morris Costumes, Inc., the district court had ruled that since some of the alleged acts of copyright infringement occurred outside the applicable limitations period, subsequent infringing activity that occurred within the limitations period was time barred as well. 243 F.3d 789, 797 (4th Cir. 2001). In so holding, the district court assumed that defendants' actions comprised "one act of infringement." Id. Reversing, the Fourth Circuit explained that "a party does not waive the right to sue for infringements that accrue within three years of filing by not asserting related claims that accrued beyond three years." Id. (internal quotation marks, alteration, and citation omitted). "This well-established rule recognizes that the statute of limitations does not shield the defendant from liability for wrongful acts actually committed during the limitations period, and its rationale applies equally to trademark infringement claims brought under the Lanham Act." Id.

Here, it is undisputed that defendants took actions in August 2014 and thereafter that gave rise to the claims asserted in the

First Amended Complaint, and plaintiff does not seek damages for any conduct outside the applicable lookback window.   All of plaintiff's claims thus are timely.   Accordingly, defendants' statute of limitations defense is dismissed and summary judgment is denied.

## C.    **Laches**

In the same vein as their statute of limitations argument, defendants assert that plaintiff's claims are barred as unduly delayed under the equitable doctrine of laches.  Defendants' effort to rely on a laches bar fails for two fundamental and independent reasons.   First, defendants cannot satisfy the threshold requirement of every assertion of a laches defense — namely, that the party invoking laches come to court with clean hands.  See Hermes Intern. v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 107 (2d Cir. 2000) ("Th[e] good-faith component of the laches doctrine is part of the fundamental principle that 'he who comes into equity must come with clean hands.'") (quoting Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U.S. 806, 814-15 (1945)).  Second, when, as the Court holds here, the applicable statute of limitations did not expire prior to the filing of the complaint, the burden remains on the defendant to prove all elements of the laches defense: (1) "that plaintiff had knowledge of defendant's use of its marks," (2) "that plaintiff

inexcusably delayed in taking action with respect thereto," and (3) "that defendant will be prejudiced by permitting plaintiff inequitably to assert its rights at this time." Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1040 (2d Cir. 1980) (citation omitted); see Ikelionwu v. United States, 150 F.3d 233, 238 (2d Cir. 1998) ("[I]f the applicable legal statute of limitations has not expired, there is rarely an occasion to invoke the doctrine of laches and the burden remains on the defendant to prove all elements of the defense."). Defendants have not satisfied this burden of proof.

1. Bad Faith

First, defendants' laches defense fails because Peju did not use the LIANA mark in good faith. As discussed above, between 2005 and 2007, Peju continued to use the LIANA mark despite actual knowledge of Cesari's first-in-time registered trademark, Cesari's opposition to Peju's use of the LIANA mark, and the TTAB's ruling that Peju's mark was likely to cause confusion with Cesari's mark. Although the TTAB's ruling may not have legally enjoined Peju from using the LIANA mark, Peju dirtied its hands when it flouted the legal conclusion of a judicial authority and disregarded its duty as a second comer "to avoid all likelihood of consumers confusing it with the product of the first comer." Nikon, Inc. v. Ikon Corp., 803 F. Supp. 910, 922 (S.D.N.Y. 1992); see Thursday LLC v.

-37-

DNVB, Inc., No. 20 Civ. 9142 (AKH), 2021 WL 2689061, at *5
(S.D.N.Y. June 29, 2021) (concluding plaintiff sufficiently stated
claim for unfair competition under New York law, which required
showing of bad faith or intent, where plaintiff alleged, inter
alia, defendant "began using the marks despite the USPTO's refusal
to register their mark due to the likelihood of confusion with the
[plaintiff's] Marks").

      With respect to Peju's second attempt to register the LIANA
mark, Peju again acted in bad faith.  Even assuming the Peju
daughters were unaware of the original dispute with Cesari when
they sought to resurrect the LIANA brand in 2014, Peju was put on
notice of Cesari's registered mark and opposition in August 2016,
when Cesari filed a request for an extension of time to oppose the
2016 Application.  See Ariana Peju Decl., Ex. E.  Cesari then sent
Peju a cease-and-desist letter in November 2016.  Id., Ex. F.  In
January 2017, Cesari apprised Peju of the TTAB's prior
determination that the LIANA mark was likely to cause confusion
with Cesari's mark.  Id., Ex. I.  Peju nevertheless continued to
use the LIANA mark.  It wasn't until July 2018 — one and a half
years after this action was commenced — that Peju finally
terminated its use of the LIANA brand.  See July 16, 2018 Letter,
ECF No. 82.

In their reply, defendants argue, without citing to any authority from the Second Circuit, that the unclean hands doctrine requires a showing of fraudulent intent and that no such showing has been made here.  Mem. of Law of Peju Province Winery L.P. and Peju Family Operating Partnership L.P. in Further Support of their Mot. for Summary Judgment ("Def. Reply Br.") at 7, ECF No. 362. To the contrary, "[a]ny willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient."  Precision Instrument Mfg. Co., 324 U.S. at 815.  Further, although "prior knowledge of a senior user's mark does not in itself imply bad faith . . . actual or constructive knowledge may signal bad faith."  Nikon, 803 F. Supp. at 924.

In more ways than one, the foregoing demonstrates that Peju does not "possess a right which is firmly planted in good faith." Id.  Peju "took a calculated risk in utilizing [the] mark and the aid of a court of equity should not be invoked on behalf of one who lost such a gamble."  Fusco Group, Inc. v. Loss Consultants Int'l, Inc., 462 F. Supp. 2d 321, 330 (N.D.N.Y. 2006) (internal quotation marks and citation omitted).

2. Laches Elements

Even if defendants could demonstrate good faith, their laches defense still fails because they have not established any of the three required elements.  First, as discussed above, defendants

-39-

have not shown that Cesari had actual or constructive knowledge of
Peju's infringing use of the LIANA mark in the aftermath of the
2003 TTAB proceedings.   That alone is sufficient to defeat
defendants' laches defense.   Second, Cesari did not inexcusably
delay in taking action against Peju's infringing conduct.   Upon
discovering each of Peju's applications to register the LIANA
trademark, Cesari promptly and diligently commenced opposition
proceedings.   Furthermore, defendants cannot claim a delay for any
period in which they made no infringing use of the LIANA mark.
Contrary to defendants' position, plaintiff need not prove that
defendants abandoned the LIANA mark as a matter of law; extensive
non-use of the mark is sufficient to toll any laches delay.   See
Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway &
Sons, 523 F.2d 1331, 1343 (2d Cir. 1975) (noting district court
excluded from laches delay all years of non-use and restarted
laches analysis only upon infringer's re-entry in the market).   As
discussed above, Peju sold out of its initial batch of LIANA-
branded wine in 2007.   From 2008 until 2014, Peju did not sell any
wine bearing the LIANA label and defendants offer no evidence
showing that they utilized or publicly promoted the LIANA brand
during that period.

Third, defendants have failed to establish that they were prejudiced by the timing of plaintiff's lawsuit.  Cesari's opposition to Peju's 2003 Application put Peju on notice that Cesari contested Peju's use of the LIANA mark.  See Broecker, 2021 WL 5309716, at *7 ("[B]ased on Plaintiffs' TTAB opposition . . . Defendants were clearly on notice that Plaintiffs[] contested their registration and use of the . . . Mark."); Tri-Star Pictures, Inc. v. Unger, 14 F. Supp. 2d 339, 360-361 (S.D.N.Y. 1998) ("Plaintiffs' warning letters placed Defendants on notice of Plaintiffs' objections to his use of the [mark]."). As such, any subsequent investment or expenditure of resources Peju made in connection with developing the LIANA brand was at its own risk. See Alfred Dunhill, 350 F. Supp. at 1367 (concluding "the defendant acted at its own peril when it continued to use the mark after" receiving plaintiff's notice of opposition to defendant's trademark application"); Fitzpatrick v. Sony-BMG Music Ent., Inc., No. 07 Civ. 2933 (SAS), 2008 WL 84541, at *3 (S.D.N.Y. Jan. 8, 2008) (rejecting laches defense where defendants "were actively involved in a dispute over the trademark, and were therefore on notice that any expansion of their business around the disputed trademark was risky"); Floralife, Inc. v. Floraline Int'l, Inc., 633 F. Supp. 108, 113 (N.D. Ill. 1985) ("[A] notice of opposition

-41-

sufficiently informs the registrant of the trademark holder's
objections and renders unreasonable any detriment the registrant
may suffer in reliance on the plaintiff's delay in filing suit.").
Even if Cesari had delayed in filing suit against Peju, which it
did not, it was unreasonable for Peju to rely on that delay and
any detriment Peju suffered was of its own making.

As a final point, the facts of this case undermine defendants'
contention that they would have chosen another brand name had
Cesari brought suit earlier.  In 2005, despite Cesari's objection
to Peju's application to register the LIANA trademark and the
TTAB's ruling that the LIANA mark was likely to cause confusion,
Peju sold several hundred cases of its LIANA-branded wine.  Schulz
Decl., Ex. A.  Then in 2016, when Cesari objected to Peju's renewed
trademark application, Peju refused to cease and desist from using
the infringing mark even after this action was commenced.  ECF
348.  For the foregoing reasons, defendants' laches defense fails
as a matter of law and summary judgment is denied.

## CONCLUSION

Defendants' motion for summary judgment is denied in its
entirety and defendants' statute of limitations and laches
affirmative defenses are dismissed with prejudice.  Summary
judgment is granted to plaintiff with respect to the extension of

this Court's prior collateral estoppel ruling to Peju Partnership.

The Clerk of Court is respectfully directed to terminate the motion

pending at ECF No. 324.

       **SO ORDERED.**

Dated:     New York, New York
             August 3, 2022

                          NAOMI REICE BUCHWALD
                 UNITED STATES DISTRICT JUDGE