UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X

CESARI S.R.L.,

                      Plaintiff,

              - against -

PEJU PROVINCE WINERY L.P., PEJU FAMILY
OPERATING PARTNERSHIP L.P., and PEJU
PROVINCE CORPORATION,
                      Defendants.

---------------------------------------X

**MEMORANDUM AND ORDER**

17 Civ. 873 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


    After a four-day bench trial in July 2023, the Court awarded plaintiff Cesari S.r.l., an Italian winemaker, ("plaintiff" or "Cesari") $666,214 in disgorged profits from defendants Peju Province Winery L.P. ("PPW") and Peju Family Operating Partnership L.P., Napa Valley vintners, ("PFOP", and together with PPW "defendants" or "Peju").  Plaintiff now seeks, pursuant to Section 35(a) of the Lanham Act, over $1.7 million in attorney's fees, nearly $300,000 in costs, and pre- and post-judgment interest.  For the reasons stated below, plaintiff's motion is granted in part and denied in part.[1]

---

[1] Plaintiff filed the instant motion on October 30, 2023.  ECF No. 478 ("Mot.").  In support of its motion, plaintiff filed a number of declarations and exhibits including: (1) the declaration of plaintiff's counsel, Valeria Calafiore Healy, submitting exhibits, ECF No. 479; (2) the second declaration of plaintiff's counsel detailing costs for plaintiff's damages expert which included biographies of the expert witness team and detailed invoices, ECF No. 480 ("Expert Decl."); (3) the third declaration of plaintiff's counsel detailing other costs and charges plaintiff incurred with invoices, ECF No. 481 ("Other Costs Decl."); (4) the

The pre-litigation history between the parties and the history of this trademark infringement litigation, including the Court's evaluation of the substantive positions asserted by the parties, as well as their strategic approaches, have been the subject of two lengthy opinions by this Court:  the first on the parties' cross-motions for summary judgment, Cesari S.r.L. v. Peju Province Winery L.P., No. 17 Civ. 873 (NRB), 2022 WL 3082960, (S.D.N.Y. Aug. 3, 2022) ("August 2022 Summary Judgment Opinion"), and the second resolving the remaining issue of damages post-trial, Cesari S.r.l. v. Peju Province Winery L.P., 693 F. Supp. 3d 375, 400 (S.D.N.Y. 2023) ("September 2023 Post-Trial Opinion").[2]  The Court assumes familiarity with these opinions and will not repeat their content,

---

fourth declaration of plaintiff's counsel describing the attorney's fees incurred by plaintiff and summarizing the time keepers, invoices, and nature of the work completed for the hours reflected in the invoices, ECF No. 482 ("First Attorney's Fees Decl."); (5) the declaration of plaintiff's expert, Beth Rubin, CPA, in support of plaintiff's request for pre-judgment interest, ECF No. 483; and (6) a further attorney's fees declaration with the total attorney's fees sought, invoices, and various charts noting the hours expended by counsel and the nature of the work completed and the stage of the litigation, ECF No. 486 ("Second Attorney's Fees Decl.").   On December 6, 2023, defendants submitted their opposition memorandum, ECF No. 489 ("Opp."), and two supporting declarations: (1) a declaration by Mr. Joel MacMull, defendants' counsel, ECF No. 490 ("MacMull Decl.") and (2) the declaration of defendants' expert David Duski regarding pre-judgment interest, ECF No. 491.

[2] In addition to these two decisions, the Court filed decisions on December 11, 2017, November 7, 2018, October 4, 2019, February 24, 2020, December 10, 2020, and February 6, 2023, see, e.g., Cesari S.r.L. v. Peju Province Winery L.P., No. 17 Civ. 873 (NRB), 2017 WL 6509004 (S.D.N.Y. Dec. 11, 2017); Cesari S.r.L. v. Peju Province Winery L.P., No. 17 Civ. 873 (NRB), 2018 WL 5831315 (S.D.N.Y. Nov. 7, 2018); Cesari S.r.l. v. Peju Province Winery L.P., No. 17 Civ.873 (NRB), 2019 WL 5460379 (S.D.N.Y. Oct. 4, 2019); Cesari S.r.L. v. Peju Province Winery L.P., No. 17 Civ. 873 (NRB), 2020 WL 1126833 (S.D.N.Y. Feb. 24, 2020); Cesari S.r.L. v. Peju Province Winery L.P., No. 17 Civ. 873 (NRB), 2020 WL 7261105 (S.D.N.Y. Dec. 10, 2020); Cesari S.R.L. v. Peju Province Winery L.P., No. 17 Civ. 873 (NRB), 2023 WL 1779543 (S.D.N.Y. Feb. 6, 2023), resolved numerous disputes by letters, see, e.g., ECF Nos. 79, 104, 227, 297, 310, 315, and 391, and held 19 conferences and in-court hearings resulting in 1,242 pages of transcript, see ECF Nos. 43, 150, 210, 231, 289, 308, 333, 369, 375, 461, 463, 465, and 467.

except as necessary to address the issues presented by the current motion.

### I.   Attorney's Fees: The Legal Context

Generally, "[t]he United States follows the 'American Rule' regarding attorney's fees: 'the prevailing party may not recover attorney's fees as costs or otherwise.'" Castillo Grand, LLC v. Sheraton Operating Corp., 719 F.3d 120, 123 (2d Cir. 2013) (quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 245 (1975)).  However, the American Rule "can, of course, be overcome by statute." Travelers Cas. and Sur. Co. of Am. v. Pacific Gas and Elec. Co., 549 U.S. 443, 448 (2007).  Section 35(a) of the Lanham Act is one of those statutes.  Section 35(a) provides that once a violation is established, a plaintiff is entitled, "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."   15 U.S.C. § 1117(a).   Moreover, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."[3] Id.  That section of the Lanham Act also states that profits or damages "shall constitute compensation and not a penalty." Id.  Thus, read as a whole, the statute instructs that

---

[3] To satisfy the "prevailing party" prerequisite to a fee award, "a litigant must have 'achieved a judicially sanctioned change in the legal relationship of the parties.'" Manhattan Review LLC v. Yun, No. 16 Civ. 0102 (LAK) (JCF), 2017 WL 11455317, at *4 (S.D.N.Y. Sept. 21, 2017), aff'd, 919 F.3d 149 (2d Cir. 2019), and subsequently aff'd, 765 F. App'x 574 (2d Cir. 2019) (quoting Mr. L. v. Sloan, 449 F.3d 405, 406 (2d Cir. 2006)).  The parties do not dispute that Cesari was the prevailing party in this action.

awards pursuant to this section should be approached with restraint. An "'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Sleepy's LLC v. Select Comfort Wholesale Corp., 909 F.3d 519, 530 (2d Cir. 2018) (citing Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014)).

This standard "demands a simple discretionary inquiry; it imposes no specific evidentiary burden." Octane Fitness, 572 U.S. at 557.  District courts have "wide latitude" to "engage in a 'case-by-case exercise of their discretion, considering the totality of the circumstances.'" 4 Pillar Dynasty LLC v. New York & Co., Inc., 933 F.3d 202, 215 (2d Cir. 2019) (quoting Octane Fitness, 572 U.S. at 554).  However, that "'equitable discretion should be exercised in light of the considerations [the Supreme Court] ha[s] identified.'" Manhattan Review LLC v. Yun, 765 Fed. App'x 554 at 577 (2d Cir. 2019) (quoting Octane Fitness, 572 U.S. at 554).  Those considerations are "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" 4 Pillar Dynasty LLC, 933 F.3d at 215 (quoting Octane Fitness, 572 U.S. at 554 n.6 (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994))).

"'Objective unreasonableness' is generally used to describe claims that have no legal or factual support." Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc., No. 13 Civ. 1526 (RJS), 2020 WL 2848232, at *3 (S.D.N.Y. June 1, 2020) (quoting Viva Video, Inc. v. Cabrera, 9 F. App'x 77, 80 (2d Cir. 2001)). Further, "[a] claim is frivolous when it lacks an arguable basis either in law or in fact." Calvino v. Romanian From the Jaiguar Dealer in 11 Ave., No. 20 Civ. 0651 (CM), 2020 WL 433097, at *1 (S.D.N.Y. Jan. 28, 2020) (internal quotation marks omitted); see Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998) ("An action is 'frivolous' when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory.") (internal quotation marks omitted). While these two factors are not the same, courts in this Circuit have recognized that they often overlap. See Hello I Am Elliot, Inc. v. Sine, No. 19 Civ. 6905 (PAE), 2021 WL 1191971, at *6 (S.D.N.Y. Mar. 30, 2021) (collecting cases). Another aspect of Octane Fitness that has special relevance here is "the need in particular circumstances to advance considerations of compensation and deterrence." Octane Fitness, 572 U.S. at 554 n.6.

Needless to say, the parties take divergent positions on whether this is an exceptional case which warrants an award of attorney's fees. From the Court's perspective, however, the answer

is clear: this is an exceptional case.  The predicates for that conclusion are contained at length and in detail in our earlier decisions.  For purposes of this motion, however, we highlight the acts and litigation positions of the defendants which lead us to conclude that this case is exceptional.

First, we set out the actions taken and decisions made by defendants, both before and after this case was filed, which, had they been otherwise, could even have avoided the filing of this case.  In 2003, plaintiff opposed PPW's application to register its LIANA mark for the sale of wine.  See August 2022 Summary Judgment Opinion at *1.  In that proceeding, the Trademark Trial and Appeal Board ("TTAB") found that Cesari had priority by virtue of its registered mark LIANO and "concluded that there was a likelihood of confusion between the marks."  Id. at *4.  After PPW "failed to appeal or otherwise challenge the TTAB's ruling and elected not to submit a revised application narrowing its target market . . . the USPTO issued a 'Notice of Abandonment' for [PPW's] Application."  Id.  "Despite the TTAB's ruling and the deemed abandonment of the 2003 Application, the next year, [PPW] began commercial sales of its LIANA-branded 2002 Late Harvest Chardonnay."  Id.  After a period during which LIANA-branded wine was not sold, defendants resumed infringing use in 2014 and 2015 when defendants published a newsletter announcing "the return of Liana" and the purchase of "a new winery that began doing business as Liana Estates."  Id.  At

6

that time, defendants also consulted with an attorney who noted there were "several other marks encompassing the word 'LIANA,'" which "Peju likely could overcome," but did not locate the TTAB's 2004 decision.  Id.

In 2016, defendants once again attempted to register the LIANA mark.  Id.  This time, plaintiff sent defendants "a cease-and-desist letter, demanding that Peju terminate its use of the LIANA mark and withdraw the 2016 Application."  Id.  The parties attempted an out-of-court resolution between November 2016 and January 2017.  "In the midst of these negotiations, the fact of the 2003 TTAB proceedings came to light, and communications eventually broke down."  Id. (citations omitted).  "On January 30, 2017, Cesari filed an opposition to the 2016 Application, citing its first-in-time priority and the TTAB's prior ruling against [defendants'] 2003 Application" and one week later filed this action.  Id. at *5.

Bottom line: despite learning of the 2004 TTAB ruling, defendants were not deterred and continued the production and sale of LIANA-branded wines.  On May 10, 2018, plaintiff sought leave to file a partial motion for summary judgment and sought injunctive relief "because Peju 'willfully continue[d] to infringe [upon] Cesari's registered mark.'"  September 2023 Post-Trial Opinion, 693 F. Supp. 3d at 383.  On June 12, 2018, the Court found that this application was mooted by "defendants' counsel's representation that defendants would cease using the disputed mark within two

7

weeks." ECF No. 79 at 1. However, plaintiff alerted the Court that the infringing use did not cease within two weeks as defendants' counsel had represented. See ECF No. 78. In fact, defendants' use did not cease until July 24, 2018 because "LE Wines, formerly Liana Estates, remain[ed] in the process of relabeling its wines bearing the LIANA mark" which would not be completed until July 24, 2018. ECF No. 82 at 2.

Given this series of events, there should have been no need for the filing of this case at all. Defendants were well aware that the use of the LIANA mark infringed on plaintiff's LIANO mark, and they had a number of opportunities to cease their infringing use before and after this action was filed, but chose not to do so. Moreover, as we have previously found, Peju had no viable merits defenses or right to use the LIANA mark.[4]

We now turn to the positions that Peju took during the litigation that we have previously rejected as unsupported in law and/or in fact and which provide further support, although none is needed, for the Court's finding that this is an exceptional case. First, "one of the earliest issues litigated in this suit was

---

[4] While the Court is not privy to the out-of-court discussions between counsel and/or the parties, based on what the Court did learn about plaintiff's formal positions and settlement demands, the Court would not be surprised to learn that plaintiff's pre-litigation demand and subsequent ones were viewed by defendants as excessive. However, as there were other approaches or strategies that defendants could have utilized other than the ones they did, irrespective of the unreasonableness or not of plaintiff's demands, they cannot serve as justification for defendants' continued use of the LIANA mark and its litigation choices.

whether [all] defendants were precluded from relitigating the issue of likelihood of confusion," which defendants long resisted. August 2022 Summary Judgment Opinion at *5.  In this Court's December 2017 Memorandum and Order, we held that PPW, "the party to the 2003 TTAB proceedings, was precluded from relitigating the TTAB's determination that the LIANA mark was confusingly similar to LIANO." Id. at *6 (quoting Cesari S.r.l., No. 17 Civ. 873 (NRB), 2017 WL 6509004 at *3-*5).  The Court did not make the same finding with respect to the other Peju entities because "the record before the Court at that time did not establish a sufficient connection between the various Peju entities for the purposes of collateral estoppel." Id.  Specifically, "the strongest connection between any of [the Peju] entities [was] disputed" and PFOP "was not formed until 2012." Id.

However, in 2022, "defendants concede[d] for the purposes of this litigation that [PPW] and [PFOP] 'are effectively one and the same entity because, inter alia, they share common ownership and control'" and also conceded that the Peju entities shared the same decision makers, making clear "a single enterprise-type connection between the two Peju entities." Id. at *7.  This concession by defendants was motivated by their need to have their statute of limitations and laches defenses apply to all defendants.  Boldly, they "ask[ed] the Court to find such interconnectedness between the Peju entities for the purposes of their affirmative defenses, but

9

not for issue preclusion." Id. at *8.  The Court rejected the unsupportable suggestion and extended its December 2017 ruling to PFOP and found that it was also "precluded from relitigating the TTAB's determination that Peju's LIANA mark is likely to cause confusion with Cesari's LIANO mark."[5]  Id.

Second, nearly five years into this lawsuit,[6] defendants argued that plaintiff's Lanham Act claims were barred by the six-year statute of limitations because plaintiff was on notice of the LIANA mark in 2003.  This Court found the arguments "meritless for two reasons.  First, defendants failed to show that plaintiff knew or reasonably should have known that defendants continued using the LIANA mark after their trademark application was rejected by the TTAB and deemed abandoned by the USPTO in 2004.  Second, and relatedly, plaintiff's claims ar[o]se solely from infringing conduct starting in 2014, when defendants began marketing new vintages of wine branded with the LIANA label, and thus are not barred by the applicable statute of limitations." Id. at *9.  Stated otherwise, defendants could not show that plaintiff had actual or constructive knowledge of their infringing conduct or that they even had "a duty of inquiry to continue monitoring Peju's conduct

---

[5] As to the third defendant, Peju Province Corporation, the parties stipulated to its dismissal on September 5, 2021, see ECF No. 298 at 4, which the Court subsequently granted, see ECF No. 299.
[6] The defendants' decision to wait five years to raise a statute of limitations argument cannot be explained by a need for pre-motion discovery.  Instead, this delay was entirely a strategic decision by defendants.

after Cesari prevailed before the TTAB." Id. Indeed, "Peju's use of the LIANA mark was minimal to nonexistent" between 2004 and 2014. Id.

Defendants also took the "untenable position" that the TTAB's 2004 decision did not enjoin them from using the LIANA mark and that they were free to use the brand as they wished. Id. at *10. The Court quickly dispensed with this argument, finding that "the TTAB proceedings put Peju on notice that the LIANA mark was deemed to be confusingly similar with that of a first-in-time registrant, that the registrant actively opposed Peju's use of the mark, and that Peju was not permitted to trademark the name. Thus, when Peju continued to use the LIANA mark in blatant disregard for the TTAB's ruling, it did so at its own risk." Id.

Finally, the Court unequivocally rejected defendants' laches defense for two separate reasons. First, the defense failed because "Peju did not use the LIANA mark in good faith." Id. at *13. Second, defendants did not meet their burden to establish that the substantive elements of the laches defense because they could not show that (1) "Cesari had actual or constructive knowledge of Peju's infringing use of the LIANA mark;" (2) "Cesari did not inexcusably delay in taking action against Peju's infringing conduct;" and (3) there was no prejudice to defendants as they were on notice of Cesari's opposition to their use of the LIANA mark as early as 2003. Id. at *13-*14.

Under all these circumstances, the objective unreasonableness and frivolous prongs of <u>Octane Fitness</u> are met.  We now turn to the "need in particular circumstances to advance considerations of compensation and deterrence."  <u>Octane Fitness</u>, 572 U.S. at 554 n.6. Again, this prong of <u>Octane Fitness</u> is easily met.  A party who loses before the TTAB and fails to challenge that result, but continues to use a mark which it cannot, does not cease when its erroneous continued use is brought to its attention and persists, after being sued and even after agreeing to cease its unlawful use, must compensate the trademark holder and a message of deterrence must be sent.  Thus, in light of the foregoing, this case is undoubtedly exceptional.

## II.   Reasonable Attorney's Fees

Having found that this case is exceptional and warrants an award of attorney's fees, the Court now turns to determining "the amount of the fees to which [plaintiff] is entitled."  <u>Sleepy's</u>, 909 F.3d at 531.  The "presumptively reasonable fee" is a fee that "a reasonable paying client would be willing to pay" given that such a party wishes to spend "the minimum necessary to litigate the case effectively."  <u>Simmons v. New York City Transit Auth.</u>, 575 F.3d 170, 174 (2d Cir. 2009).

### A. Fees Sought

Plaintiff submits that it is entitled to over $1.7 million in attorney's fees for the work performed by various members of

plaintiff's counsel over the course of the litigation.[7]  See Second Attorney's Fees Decl. at 5.  This figure includes "a 15% premium on the Firm's standard rates" pursuant to a success fee agreement negotiated between plaintiff and its counsel.  First Attorney's Fees Decl. at ¶ 10.

Plaintiff's counsel has submitted a number of charts detailing the breakdown of fees on a per year basis and reflecting the hours and fees sought by plaintiff to each stage of the litigation per year, along with the invoices supporting these figures.  Plaintiff's counsel's per year fee chart is recreated below:

|  | Litigation Year | Total Fees Sought[8] | Relevant Exhibits |
|---|---|---|---|
| 1. | 2017 | $174,820.61 | Ex. 7 (summary) Exs. 5, 6, 8, 31 (support) |
| 2. | 2018 | $270,951.48 | Ex. 8 (summary) Exs. 5, 9, 31 (support) |
| 3. | 2019 | $165,856.99 | Ex. 12 (summary) Exs. 5, 11, 31 (support) |
| 4. | 2020 – Q1 | $17,489.10 | Ex. 14 (summary) Exs. 5, 13, 31 (support) |
| 5. | 2020 – Q2/4 | $167,667.03 | Ex. 15, 18 (summaries) Exs. 16, 17, 32 (support) |

---

[7] Plaintiff notes that this figure excludes three categories of attorney's fees it has incurred but does not seek here, namely: (1) fees related to its motion for sanctions that was denied in June 2021; (2) fees incurred by plaintiff's Italian-based counsel; and (3) fees for assistance from other counsel related to trademark prosecution for the renewed application for the LIANA mark and trial assistance for defendants' California depositions and "threats that [defendants] would move to quash various subpoenas in California."  Mot. at 21.
[8] The "Total Fees Sought" on plaintiff's chart reflects the 15% premium negotiated between plaintiff and its counsel.  See First Attorney's Fees Decl. at ¶ 10.

| 6. | 2021 | $146,500.80 | Ex. 20, 22 (summaries) Exs. 19, 21, 33 (support) |
| 7. | 2022 | $260,009.73 | Ex. 24, 26 (summaries) Exs. 23, 25, 34 (support) |
| 8. | 2023 | $504,440.57 | Ex. 28, 30 (summaries) Exs. 27, 29, 35 (support) |
| | **Total** | **$1,707,736.31** | |

Second Attorney's Fees Decl. at 5.  In addition, plaintiff's counsel states that while Cesari "has paid my Firm $408,833 in attorney's fees that were invoiced for the period covering January 2017 to March 2020," invoicing has been deferred due to the Covid-19 pandemic but plaintiff "has agreed to pay all remaining fees." First Attorney's Fees Decl. at ¶ 15.  Defendants maintain that an award of attorney's fees of $1.7 million is unreasonable based on plaintiff's counsel's hourly rates, limited success, and inappropriate billing.  Opp. at 17-23.

### B. Amount to be Awarded

The challenge here is not whether attorney's fees should be awarded, but how much.  It has been said that context is everything. Whether that is broadly true or not, there is no question that here context very much matters.  The context of this case has two interrelated aspects.  First, this is not a trademark case in which the plaintiff trademark holder suffered actual competitive damage to its business because of defendants' sale of infringing goods.

14

The Court has never been presented with any evidence of a sale that plaintiff lost because of defendants' use of the LIANA mark.[9]

The second aspect of this case flows from the first.  In the absence of any actual competitive harm, the focus of plaintiff's efforts should have been on obtaining injunctive relief.  Obtaining an injunction would have fulfilled plaintiff's established obligation to police its mark.  In that regard, the record reflects that as of July 2018, defendants ceased using the LIANA mark and rebranded their winery, and further that on March 6, 2019 Peju "filed a notice with the TTAB 'expressly abandon[ing]' the 2016 Application with prejudice." August 2022 Summary Judgment Opinion at *5.  It is in this context that plaintiff's request for attorney's fees must be evaluated.

It is well-established that the "presumptively reasonable fee" is a fee that "a reasonable paying client would be willing to pay" given that such a party wishes to spend "the minimum necessary to litigate the case effectively." Simmons, 575 F.3d 170, 174 (2d Cir. 2009).  In addition, "attorney's fees must be reasonable in terms of the circumstances of the particular case." Beastie Boys v. Monster Energy Co., 112 F. Supp. 3d 31, 48 (S.D.N.Y. 2015) (punctuation omitted).  Indeed, in analyzing fee awards, the Supreme

---

[9] In fact, plaintiff withdrew its claim for actual damages in its amended complaint, which amendment formalized a pre-existing decision by plaintiff. See Cesari S.r.l., 693 F. Supp. 3d at 385 ("On March 2, 2020, plaintiff filed its amended complaint, which . . . omitted plaintiff's . . . requests for . . . damages, thereby concentrating on obtaining disgorgement of profits.").

Court has stated that "the most critical factor is the degree of success obtained." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 436 (1983). Finally, the Court is guided by the language of the statute pursuant to which this case was brought. Section 1117(a) of Title 15 directs the Court to proceed "subject to the principles of equity" and provides that damages awarded "shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a).

The question becomes how those principles apply here. Given the facts of this case, as well as the dictates of the caselaw requiring a trademark holder to protect its mark, the fees necessary to obtain injunctive relief would be awardable. However, given the absence of actual lost sales, no reasonable client would spend more than they could recover in disgorged profits because any amount spent above that recovery would result in an actual loss.[10]

---

[10] This Court recognizes that there are companies whose trademarks are frequently copied and who, as part of their business model, will file many trademark infringement cases to protect their marks and discourage proliferation of "knock-offs" without expecting to recover their costs. This is not such a case. For example, a review of this District's Electronic Case Filing system reflects that Chanel Inc. has filed 11 such cases since January 2014 in this District alone, <u>see</u> <u>Chanel, Inc. v. Villo & Co., LLC et al</u>, No. 23 Civ. 6781 (NRB), (August 2, 2023, S.D.N.Y.); <u>Chanel, Inc. v. Lin et al</u>, No. 23 Civ. 2004 (JHR) (Mar. 8, 2023, S.D.N.Y.); <u>Chanel, Inc. v. Shiver and Duke LLC et al</u>, No. 21 Civ. 1277 (MKV) (Feb. 12, 2021, S.D.N.Y.); <u>Chanel, Inc. v. Richardson et al</u>, No. 17 Civ. 4565 (PKC) (June 16, 2017 S.D.N.Y.); <u>Chanel, Inc. v. Perfume Emporium LLC</u>, No. 16 Civ. 8474 (LAP) (Oct. 31, 2016, S.D.N.Y.); <u>Chanel, Inc. v. Ephrat et al</u>, No. 15 Civ. 4356 (JSR) (June 5, 2015 S.D.N.Y.); <u>Chanel, Inc. v. Shop Jeen, LLC et al</u>, No. 14 Civ. 9861 (GBD) (Dec. 15, 2014 S.D.N.Y.); <u>Chanel, Inc. v. Heller</u>, No. 14 Civ. 8011 (JGK) (Oct. 3, 2014 S.D.N.Y.); <u>Chanel, Inc. v. Sardle et al</u>, No. 14 Civ. 3867 (PAC) (May 30, 2014 S.D.N.Y.); <u>Chanel, Inc. v. New Diamond District Inc. et al</u>, No. 14 Civ. 2339 (PGG) (Apr. 3, 2014 S.D.N.Y.); <u>Chanel, Inc. v. Does 1-10</u>, No. 14 Civ. 1232 (ALC) (Feb. 25, 2014), Gucci America, Inc. has filed six such cases in that same time frame, <u>see</u> <u>Gucci America, Inc. v. Century 21 USA, LLC et al</u>, No. 23 Civ. 10247 (GHW) (Nov. 21, 2023 S.D.N.Y.); <u>Gucci America, Inc. v. Sam's West, Inc. et al</u>, No. 23 Civ. 10246 (JPO) (Nov. 21, 2023 S.D.N.Y.); <u>Gucci America, Inc v. Lord & Taylor Ecomm LLC et al</u>, No. 23 Civ. 10239 (LGS) (Nov. 21,

Thus, the ceiling on attorney's fees that can be recovered by plaintiff from defendants is $666,214.  Moreover, even if actual recovery is not a hard and fast ceiling, the fact is that here plaintiff seeks $1.7 million dollars which does not even include (1) fees for its motion for sanctions that was denied; (2) fees incurred by plaintiff's Italian-based counsel; and (3) fees for assistance from other counsel related to trademark prosecution.  See Mot. at 21.  Extrapolating from plaintiff's submissions on the motion, the investment of attorney hours, if paid for, would approximate four times the recovery.  While plaintiff is, of course, free to spend its resources as it wishes, there is no justification for shifting to the defendants plaintiff's litigation choices, especially when, quite apart from the shifting of fees, as ordered, defendants have already been ordered to disgorge their profits and pay their own counsel's bills.[11]

---

2023 S.D.N.Y.); Gucci America, Inc. v. Beyond the Rack Enterprises, Inc. et al, No. 16 Civ. 1156 (KMW) (Feb. 16, 2016 S.D.N.Y.); Gucci America, Inc. et al v. Alibaba Group Holding Ltd. et al, No. 15 Civ. 3784 (PKC) (May 15, 2015 S.D.N.Y.); Gucci America, Inc. et al. v. Alibaba Group Holding, et al, No. 14 Civ. 5119 (PKC) (July 10, 2014 S.D.N.Y.), and Nike Inc. has filed at least five cases since 2020, see Nike, Inc. v. By Kiy LLC et al, No. 23 Civ. 2431 (VM)(Mar. 22, 2023 S.D.N.Y.); Nike, Inc. v. USAPE LLC, No. 23 Civ. 660 (PGG) (Jan. 25, 2023 S.D.N.Y.); Nike, Inc. v. Reloaded Merch LLC et al, No. 22 Civ. 10176 (VM) (Nov. 30, 2022 S.D.N.Y.); Nike, Inc. et al v. www.perfectkicks.me et al, No. 21 Civ. 248 (SHS)(Jan. 12, 2021 S.D.N.Y.); Nike, Inc. v. B&H Customs Services, Inc. et al, No. 20 Civ. 1214 (JMF) (Feb. 11, 2020 S.D.N.Y.).  There is no proliferation of efforts to use a mark confusingly similar to Cesari's LIANO in a competitive marketplace.  Thus, a prophylactic, but uneconomical, approach to litigation has no relevance to Cesari and cannot justify unrestrained expenditures on attorney's fees especially when Cesari seeks to shift fees to the defendants.
[11] We anticipate that plaintiff's counsel would respond to this conclusion that she did not have total control over the number of attorney hours invested in this case.  The Court does not dispute that contention in broad terms.  There is no doubt that in all cases some hours are incurred in response to an opponent's

Having reached this result, it is unnecessary for the Court to engage in the traditional hour-by-hour, dollar-by-dollar analysis to determine reasonable attorney's fees.[12]   Nonetheless, the Court would like to offer, in broad strokes, its views on some aspects of plaintiff's attorney's fees application under such an analysis. First, the billing rates plaintiff seeks for its lead counsel, Valeria Healy, are well within the range approved in this District and appropriate based on the background provided.[13]   See, e.g., Focus Prod. Grp. Int'l, LLC v. Kartri Sales Co., Inc. and Marquis Mills, Int'l, Inc., No. 15 Civ. 10154 (PAE) (SDA), 2023 WL 3815276, at *10 (S.D.N.Y. June 5, 2023); Am. Exch. Time LLC v. Tissot S.A., No. 17 Civ. 4737 (VM), 2022 WL 17414348, at *6 (S.D.N.Y. Dec. 5, 2022) (collecting cases).   Second, plaintiff's attorney's fees request includes a "success fee" which is described as a "15% premium on the Firm's standard rates" but does not appear to be tied to any success in the litigation.   First Attorney Fee Decl. ¶ 10.   While plaintiff and its counsel may have negotiated an upfront cost deferral for this rate premium, such an arrangement is

---

[12] actions.   This case is no exception.   Indeed, the Court witnessed the dynamic between counsel.   However, the possibility of an attorney's fee award is not a license to litigate without restraint.   Early in a case, an attorney should evaluate its potential value and act accordingly.   Nor is it irrational to decide to settle a case if the cost of pursuing it can no longer be economically justified.

[12] Based on the Court's intimate familiarity with this litigation and the submissions concerning fees on this motion, $666,214 is broadly within the range of an appropriate award if a lodestar analysis was applied.

[13] To be clear, the Court declines to comment on the fees sought on behalf of any other attorney or staff member.

18

between plaintiff and its counsel and should not be shifted to the defendants.  Finally, to the extent that lead counsel spent time on administrative tasks, such as coordinating printing and shipping of courtesy copies, those hours cannot be billed at the full rate when the work could have been performed by a legal assistant.  See Commissions Imp. Exp. S.A. v. Republic of the Congo, No. 19 Misc. 195 (KPF), 2021 WL 4991716, at *5 (S.D.N.Y. Oct. 27, 2021) (finding a reduction of fees appropriate for administrative tasks).

## II.  Interest

 The Court turns next to plaintiff's request for pre- and post-judgment interest.  The goal of prejudgment interest is to compensate "for the loss of use of money due as damages." City of Milwaukee v. Cement Div., Nat. Gypsum Co., 515 U.S. 189, 196 (1995) (quotation marks omitted).  The Second Circuit has noted that courts may consider factors "generally relevant to awards of prejudgment interest, such as '(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court.'" 4 Pillar Dynasty LLC, 933 F.3d at 216 n. 12 (quoting Wickham Contracting Co. v. Local Union No. 3, 955 F.2d 831, 834 (2d Cir. 1992)).  Here, plaintiff did not seek, and the Court did not award, any actual damages.  See Coty Inc. v. Excell Brands, LLC, 277 F. Supp. 3d 425, 470 (S.D.N.Y. 2017)

(considering the absence of "ascertainable damage" when denying attorney's fees and prejudgment interest).  As plaintiff was not deprived of the use of defendants' profits before they were awarded, an award of prejudgment interest would impose unwarranted penalties on top of the disgorgement and attorney's fees awards.  In addition, an award of pre-judgment interest would serve none of the factors enumerated by the Second Circuit.  However, plaintiff is entitled to post judgment interest under 28 U.S.C. § 1961.

### III.  Costs

Finally, the Court turns to plaintiff's requests for costs. The Lanham Act provides for the recovery of the costs of the action, subject to the principles of equity. 15 U.S.C. § 1117(a).  Plaintiff requests costs of $298,711.85, which includes $214,275.52 in expert costs for it damages expert, Beth Rubin, and $84,436.33 for legal research, photocopies, court fees, transcripts, messenger services, process servers, and other costs.  See Other Costs Decl., Ex. 1 at 6.  Plaintiff argues that these costs were necessary for the representation, routinely billed expenses, and routinely recoverable, and therefore should be awarded.

In response, defendants maintain that plaintiff is only entitled to recover $12,667.07 in costs and a majority of plaintiff's requested costs are not recoverable because they are

not taxable.[14]  Specifically, defendants argue that plaintiff can recover at most $609.25 in expert costs, $2,762.39 for court transcripts, $327.91 in process server fees, $8,562.15 in deposition transcript costs, and $1,110.43 in printing costs.  Meanwhile, other costs, such as travel expenses, online legal research charges, pretrial court transcripts, investigation costs, and portions of deposition expenses and copying and deliver costs are not recoverable.

Defendants rely on the Supreme Court's decision in Rimini St., Inc. v. Oracle USA, Inc., wherein the Supreme Court held that "[a] statute awarding 'costs' will not be construed as authorizing an award of litigation expenses beyond the six categories listed in §§ 1821 and 1920 of Title 28, absent an explicit statutory instruction to that effect."  583 U.S. 334, 340 (2019).  Defendants maintain that because the Lanham Act provides for the "cost of the action," a prevailing party can only recover the costs specifically delineated in 28 U.S.C §§ 1821 and 1920 (the "general cost statutes").[15]

---

[14] Specifically, defendants argue that plaintiff can recover only $40 for the single day plaintiff's expert testified at trial pursuant to Local Civil Rule 54.1(c)(3) and 28 U.S.C § 1821, at most $569.25 in other expert costs, and only $12,057.82 of plaintiff's other costs.

[15] Specifically regarding its application for costs, plaintiff mostly relies on cases that pre-date the Supreme Court's decision in Rimini Street.  The only case plaintiff cites with respect to the award of costs that post-dates that decision is Abbott Labs v. H&H Wholesale Servs., Inc., No. 15 Civ. 5826 (CBA)(LB), 2022 WL 17977495, (E.D.N.Y. Dec. 28, 2022).  However, that court did not reach the question of which costs are considered "reasonable costs" and referred that determination to the assigned magistrate judge.  Id. at *11.

In light of the Supreme Court's clarification that statutory language permitting the recovery of "full costs" does not expand recovery beyond the costs enumerated in 28 U.S.C §§ 1821 and 1920, the Court concurs with defendants that plaintiff can only recover costs delineated by the general cost statutes, subject to any specifications in the District's local civil rules.[16]  See Rimini St., 583 U.S. at 340; see also Hypnotic Hats, Ltd. v. Wintermantel Enterprises, LLC, No. 15 Civ. 06478 (ALC), 2020 WL 1467118, at *4 (S.D.N.Y. Mar. 26, 2020) ("Local Civil Rule 54.1 further outlines the costs taxable in this district and controls to the extent that it addresses a particular cost.").[17]  These costs include certain types of witness costs, clerk and marshal fees, transcript fees, printing fees, copying and exemplification fees, docket fees, and court-appointed expert and interpreter fees.  28 U.S.C. §§ 1821, 1920.

---

[16] As defendants argue in a footnote, citing cases before Rimini Street, "[t]here are cases in this Circuit that permit recovery of miscellaneous costs that are not listed in §§ 1821 and 1920 by reasoning that they are out-of-pocket expenses incurred by attorneys . . . [b]ut these opinions are irreconcilable with, and were implicitly overruled" by Rimini Street.  Opp. at 35 n. 13.  Although, district courts in some of the most recent cases in this Circuit have awarded costs including research fees and eDiscovery management fees, see, e.g., Mister Softee, Inc. v. Abdallah, No. 22 Civ. 826 (LJV), 2024 WL 1363677, at *10 (W.D.N.Y. Mar. 30, 2024); Hudson Furniture, Inc. v. Mizrahi, 20 Civ. 4891 (PAC)(RWL), 2024 WL 565095, at *13 (S.D.N.Y. Feb. 7, 2024), those cases rely on precedents that predate the Supreme Court's decision in Rimini Street.

[17] The Local Rules of the United States District Courts for the Southern and Eastern Districts of New York were updated effective July 1, 2024.  However, because this Memorandum and Order was issued less than 14 days after the effective date of the updated rules, the prior version of the District's local rules applies.  See Local Civil Rule 1.1.

Before turning to the specific costs disputed by defendants, plaintiff seeks certain categories of costs that are simply not enumerated in the general cost statutes.  Specifically, plaintiff seeks $1,179.83 in investigation costs, $229.34 in shipping costs, $48,390.43 in legal research costs, $28.50 in PACER costs, and $400 for Covid-19 tests to attend a November 2021 hearing.  None of these costs are taxable under the general cost statutes and therefore cannot be awarded as costs.  However, plaintiff is entitled to fully recover the $400 in filing fees under 28 U.S.C. § 1920(1).  The Court now addresses the costs challenged by defendants.

### A. Expert Costs

First, plaintiff seeks $214,275.52 in expert costs for its damages expert, Beth Rubin.  Plaintiff argues that expert costs should be awarded because it was ready to proceed without damages experts but, was "left with no choice" to retain an expert based on defendants' insistence that an expert was necessary.  Mot. at 9.  Defendants challenge this request, noting that under 28 U.S.C § 1821 and this District's Local Civil Rule 54.1(c)(3), expert witness fees are limited to $40 per day.[18]  Opp. at 32.

Here, Ms. Rubin testified during one day of trial.  Pursuant to 28 U.S.C. § 1821(b), "[a] witness shall be paid an attendance

---

[18] As defendants note, plaintiff relies on <u>Bellifemine v. Sanofi-Aventis U.S. LLC</u>, 07 Civ. 2207, 2010 WL 3119374, at *7 (S.D.N.Y. Aug. 6, 2010), for its request to recover expert witness fees.  However, the cost application in that case was pursuant to a class action settlement and not under the Lanham Act.  <u>See</u> <u>id.</u>

fee of $40 per day for each day's attendance."  Similarly, the Second Circuit has noted, although in dicta, that an award of expert witness costs should be no more than $40 per day "under 28 U.S.C. § 1821 and the Lanham Act."  Merck Eprova AG v. Gnosis S.p.A., 760 F.3d 247, 266 (2d Cir. 2014).  Thus, plaintiff is awarded $40 in expert costs.[19]

As part of its cost application, plaintiff also seeks recovery of $3,316.50 for expert witness fees pursuant to Federal Rule of Civil Procedure 26(b)(4)(a).  That rule provides that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial."  Fed. R. Civ. P. 26(b)(4)(A).  In addition, "[u]nless manifest injustice would result, the court must require that the party seeking discovery: (i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A)."  Fed. R. Civ. P. 26(b)(4)(E)(i).  According to plaintiff, defendants "only paid exactly 7 hours of Ms. Rubin's time for deposition, even though she was required to spend substantially more time than what the [defendants] paid."  Expert Decl. ¶ 26.  Plaintiff seeks 1.5 hours for Ms. Rubin's travel time to the deposition, an additional 1.3 hours caused by defendants' counsel's late arrival to the deposition and "other time during the deposition day," and 3.9 hours for Ms. Rubin's review of the

---

[19] While plaintiff may have also received travel expenses because "[a] witness who travels by common carrier shall be paid for the actual expenses of travel," 28 U.S.C. 1821(c)(1), no such travel expenses were submitted.

deposition and preparation of an Errata sheet.  Expert Decl. ¶ 26; Expert Decl., Ex. 3 at 52 (June 29, 2023 FTI Consulting Invoice).

In response, defendants argue that these costs are not taxable and should not be "shoehorn[ed]" into the cost motion.  Opp. at 32-33.  In the alternative, defendants argue that these fees should be reduced because: (1) "compensation for travel time should be half the regular hourly amount charged," Trombetta v. Novocin, No. 18 Civ. 993, 2023 WL 2575242, at *2 (S.D.N.Y. Mar. 20, 2023); (2) defendants' counsel arrived only 46 minutes, or 0.8 hours, late to the deposition; and (3) Ms. Rubin's review of the deposition and preparation of the Errata sheet is not "time spent responding to discovery" under Federal Rule of Civil Procedure 26.[20]

The Court will not deny plaintiff's request for Ms. Rubin's fee for the deposition as required under Federal Rule of Civil Procedure 26 because it was sought in conjunction with the instant motion.  Turning to the specific costs defendants dispute, first, defendants are correct that travel compensation should be compensated at half of the hourly rate charged.  Second, the deposition of plaintiff's expert was delayed by 46 minutes due to defendants' counsel, see MacMull Decl., Exs. A-B, and thus plaintiff may also recover an additional 0.8 hours for defendants' counsel's delay at Ms. Rubin's full hourly rate.  Third, the 3.9 hours spent

---

[20] Defendants do not argue that Ms. Rubin's rate is unreasonable and admit that defendants have already paid for seven hours of Ms. Rubin's deposition. Therefore, the Court need not analyze whether Ms. Rubin's rate is reasonable.

preparing an Errata sheet following the deposition are also compensable.  See <u>Hobson v. Kemper Indep. Ins. Co.</u>, No. 3:20 Civ. 812 (SALM), 2022 WL 3867599, at *7 (D. Conn. Aug. 30, 2022).

Accordingly, pursuant to Federal Rule of Civil Procedure 26, defendants must also pay an additional 4.7 hours of Ms. Rubin's time for the delay to her deposition due to defendants' counsel's tardy arrival and the preparation of the Errata sheet after her deposition at her hourly rate, and 1.5 hours of travel time at half her hourly rate, amounting to $2,697.75, in addition to expert witness costs of $40 discussed above.

### B. Travel Expenses

Plaintiff seeks two categories of travel expenses: (1) $3,801.53 for Cesari's CEO travel from Italy to New York to attend a September 15, 2022 court conference and (2) $3,908.66 for counsel's travel to California for depositions held in July 2018 and November 2019.  Local Rule 54.1(c)(3) is clear that "no party to the action may receive witness fees, travel expenses, or subsistence."  While Mr. Gianmarie Cesari was certainly welcome to attend the conference in the Court in which his company chose to file this case, the Court did not order his attendance.  Rather, counsel was simply required to "have the authorization to settle the case and to make other appropriate stipulations."  ECF No. 374. Therefore, there is no basis to compensate plaintiff for travel to the forum where it chose to bring its suit.

In addition, plaintiff requests costs for their counsel's travel expenses to attend 2018 and 2019 depositions in California. Pursuant to Local Rule 30.1, prior to an examination, a party may request expenses, including a reasonable counsel fee, for one attorney "[w]hen a deposition upon oral examination is to be taken at a place more than one hundred (100) miles from the courthouse." While California is more than 100 miles from the courthouse, plaintiff did not request these expenses before the depositions took place. In any event, plaintiff chose to sue the California-based defendants in this District, noticed these depositions, and could have conducted the deposition remotely. The Court will not award travel expenses for having to travel to California for depositions. Thus, both sets of travel expenses are denied.

### C. Deposition Expenses

Next, plaintiff seeks $12,815.60 for various deposition transcripts and deposition video streaming. First, plaintiff requests costs for the first deposition of Mr. Scott Gerien, defendants' former counsel, which defendants oppose because it was not used at trial or on a substantive motion. This Court's local rules are clear that the cost for a deposition transcript is taxable "if they were used by the Court in ruling on a motion for summary judgment or other dispositive substantive motion. Costs for depositions taken solely for discovery are not taxable." Local Rule 54.1(c)(2). Thus this cost will not be allowed. In addition,

plaintiff seeks costs related to Mr. Gerien's second deposition, but this Court has previously addressed these costs.  In the Court's letter of November 22, 2021 to both parties, the Court clearly stated that "the second deposition of Mr. Gerien should proceed with each party bearing its own costs."  ECF No. 310.  Finally, the cost of video streaming these depositions is not an enumerated cost under the general cost statutes or the Court's local rules.  Thus, plaintiff can only recover the costs of the other deposition transcripts defendants do not challenge, for a total of $8,562.15.

### D. Service Costs

Plaintiff also seeks $984.50 in service costs.  Defendants contend that only $327.91 is recoverable because two items on plaintiff's chart totaling $656.59 include "private investigation" and service of process fees that are not recoverable.  While costs for private process servers are also not enumerated in the general cost statute, the Second Circuit has recognized that parties may recover private process server costs "only to the extent that they do not exceed the costs" that the United States Marshals Service would have incurred to effect service.  U.S. v. Merritt Meridian Constr. Corp., 95 F.3d 153, 172 (2d Cir. 1996).  The current rate for United States Marshals Service to effect service is $65.00 per hour.  28 C.F.R. § 0.114.  Plaintiff's supporting documentation does not provide further information on the hours spent for service of these subpoenas and therefore the Court cannot differentiate the

hours spent on service and on "private investigation."  In addition, these witnesses may also have voluntarily accepted a notice of deposition.  Thus, the Court will only award $327.91 in service costs.[21]

### E. Hearing Transcripts

Next, plaintiff seeks $4,800.40 for hearing transcripts. Defendants argue that plaintiff may only recover costs for trial transcripts because the Court did not provide authorization in advance.  Under Local Civil Rule 54.1(c)(1), "[t]he cost of a transcript of Court proceedings prior to or subsequent to trial is taxable only when authorized in advance or ordered by the Court." Because these costs are taxable by order of the Court, and considering the Court's guidance and rulings provided from the bench at several conferences over the course of this litigation, the Court will award the transcript costs for trial and those hearings where the Court made specific rulings and had the questioning of defendants' witness Ms. Kandis Shultz, namely, transcripts for hearings dated January 17, 2019, April 30, 2020, August 18, 2020, June 9, 2021, and December 9, 2021.  The Court finds that costs relate to "transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2).  Thus, plaintiff is entitled to $4,095.76 for hearing transcripts.

---

[21] Defendants do not object to the other fees listed in this section of plaintiff's chart.  We note that this fee would be recoverable under Local Rule 54.1(c)(3).

## F. Document Reproduction Costs and Copies

Plaintiff seeks $10,904.17 for document reproduction costs. Defendants argue that plaintiff may only recover $1,110.43, the cost of one trial binder.  While fees for printing and copies are taxable under 28 U.S.C. § 1920(3) and (4), Local Rule 54.1(c)(5) provides that "[t]he cost of copies used for the convenience of counsel or the Court are not taxable."  In addition, "[t]he party seeking costs has the burden to demonstrate 'what documents were copied, how many copies were made, the cost per page charged for copying, and why the copies were necessary.'"  Bauta v. Greyhound Lines, Inc., No. 14 Civ. 3725 (RER), 2019 WL 8060181, at *6 (E.D.N.Y. June 17, 2019) (quoting Robinson v. City of New York, 2009 WL 3109846, at *11 (S.D.N.Y. Sept. 29, 2009)).  Plaintiff describes most of the document reproduction costs as "courtesy copies," but identifies one entry for $4,441.71 of trial materials "for Court, witness, and opposing counsel."  Other Costs Decl., Ex. 1 at 5. Accordingly, the Court awards $1,110.43, one-fourth of that amount, as the cost of printing and copies for witness materials during trial and $125.72 identified as additional materials for trial for a total of $1,236.15.  See Advanced Video Techs., LLC v. HTC Corp., No. 11 Civ. 6604 (CM) (RLE), 2016 WL 1253899, at *5 (S.D.N.Y. Feb. 23, 2016), report and recommendation adopted sub nom. Advanced Video Techs. v. HTC Corp., No. 11 Civ. 8908 (CM), 2016 WL 1271498 (S.D.N.Y. Mar. 30, 2016) (denying, in part, printing and copying costs where

the Court could not determine the fees to tax for production of documents).

Plaintiff also seeks $339.90 for a payment to a law firm to obtain a certified copy of plaintiff's trademark from the USPTO. However, as the Court previously noted, "[t]his case . . . involves a <u>registered</u> mark, the validity of which has never been called into question." <u>August 2022 Summary Judgment Opinion</u> at *2 n. 3 (emphasis in original). Thus, the cost of this copy will not be awarded.

### G. Interpreter Services

Plaintiff seeks $55 in costs for interpreter services for the translation of Mr. Cesari's medical certificate. However, this cost is not recoverable. The provision for interpreters under 28 U.S.C. § 1920(6) "is limited to the cost of oral translation and does not include the cost of document translation." <u>Taniguchi v. Kan Pac. Saipan, Ltd.</u>, 566 U.S. 560, 562 (2012).

In sum, plaintiff is entitled to an award of $14,661.97 in costs and is also entitled to $2,697.75 in expert witness fees pursuant to Rule 26(b)(4)(E)(i).

### CONCLUSION

For the foregoing reasons, plaintiff's motion is granted in part and denied in part. Plaintiff is entitled to attorney's fees of $666,214, costs of $14,661.97, expert witness fees under Rule

26(b)(4)(E)(i) of $2,697.75, and post judgment interest.[22]   The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 477, enter judgment for the plaintiff in accordance with this opinion, and close the case.

**SO ORDERED.**

Dated:      July 11, 2024
            New York, New York

                                        _____
                                              NAOMI REICE BUCHWALD
                                          UNITED STATES DISTRICT JUDGE

---

[22] While defendants' counsel requested oral argument, given the detailed and extensive briefing and the nature of the issues, the Court has concluded that further clarification by way of oral argument is unnecessary.